SARTAIN, Judge.
This is an expropriation proceeding occasioned by the taking of defendants’ property in Ascension Parish for the construction of Interstate 10 (State Project No. 450-11-02, Federal Aid Project No. 1-10-4(5)177, Dutchtown-Gonzales section.) Suit was filed on June 4, 1971, at which time the sum of $5,791.00 was deposited in the registry of the court and an Order of Expropriation was signed by the district judge.
The case was assigned for trial and heard on June 2, 1972. The court reporter was ill on that date but it was agreed by all parties that the matter would be heard without the ultimate benefit of the transcript of the testimony and that a narrative of facts (C.C.P. Art. 2131) would be submitted by respective counsel. When counsel could not agree on the testimony, the trial judge was then required to submit his own narrative of facts, which he did.
In due course, judgment was rendered increasing the amount for the taking from $5,791.00 to $7,366.00, but denying defendants’ claims for severance damages. From this judgment defendants have appealed. We affirm.
Defendants assert the following assignment of error:
1.
The District Court erred in not assessing the value of the part taken at $2000.00 per acre, which was the reflected market value of the land as of the date of the taking.
2.
The District Court erred in not finding that the remainder property had sustained severance damages in view of the affects to the property of the defendants-landowners as a result of the taking and this interstate highway project’s proximity to the property.
Plaintiff’s basic argument is that the judgment of the trial court is not manifestly erroneous and should be permitted to stand.
At the outset, we must note that the record consists solely of the pleadings, the written reports of four appraisers, and the trial judge’s Narrative of Facts. However, the latter simply refers to the reports of the appraisers as contained in the record without explanation as to which of the reports or any part thereof the trial judge deemed to be more reasonable and thus acceptable to him. Hence, we do not have the benefit of the trial judge’s thoughts nor the basis for the increase in the value of the land taken, nor his reasons for denying severance damages. We shall, therefore, examine the reports of the ap *237 praisers to determine if, in our opinion, the result reached by the judge a quo is manifestly erroneous.
The following sketch can best illustrate defendants’ property, both before and after the taking.

As evidenced by the above sketch, defendants’ original tract contained 41.040 acres and was bounded on the west by State Highway 930, on the north by State Highway 939, and on the south by State Highway 940. The portion taken consisted of 4.012 acres, leaving defendants 1901.09 feet front on State Highway 930, the same frontage on State Highway 939 on the north, and 787 feet frontage on a connecting road between State Highway Nos. 930 and 940.
The state highways above referred to are typical rural asphalt roads. All ap *238 praisers indicated the property was fenced, fairly high, well drained, and wooded on the north and cleared on the southern portions. However, a photograph in the record shows that the fences were in rather poor condition. The appraisers further lead to the conclusion that the highest and best use of this property was and is for rural residential purposes, i. e., subdivided into two to five acre lots. „
All of the appraisers used the market data approach and obtained comparables upon which to base their conclusions.
The two appraisers appearing for the plaintiff were Messrs. Oren W. Russell and Daniel J. Carlock, Jr. Mr. Russell appraised the property at a value of $1250.00 per acre, the fence at $280.18, and the water well at $347.00, for a total value of $5,642.18, computed as follows:
$1250.00 per acre X 4.012
acres = $5,015.00
- Value of fence and water well 627.18
for a total of $5,§42.18
Mr. Carlock appraised defendants’ property at $1300.00 per acre and $575.00 for improvements, for a total value of $5,790.60, computed as follows:
$1300.00 per acre X 4.012
acres = $5,215.60
Value of improvements 575.00
for a total of $5,790.60
Neither Mr. Russell nor Mr. Carlock was of the opinion that defendants were entitled to any severance damages.
The appraisers appearing for the defendants were Messrs. C. C. Book and Kermit Williams. Mr. Book concluded that the per acre value of defendants’ property before the taking was $2,500.00 per acre and that the water well was worth $500.00.
$2500.00 per acre X 4.012
acres = $10,030.00
Value of the water well 500.00
for a total of $10,530.00
He further determined that the balance of the tract consisting of 37.028 acres suffered severance damages to the extent of fifteen percent or $13,885.00.
Mr. Kermit Williams placed a per acre value of $2,000.00 on defendants’ property and $900.00 on the water well.
$2000.00 per acre X 4.012
acres = $8,024.00
Value of the water well 900.00
for a total of $8,924.00
He was also of the opinion that the remainder of defendants’ property suffered severance damages in the amount of twenty percent of the value or $14,811.00.
We shall first address ourselves to the value of the portion of the property expropriated. Assuming that $600.00 of the amount awarded by the trial judge was for improvements, either the fence or the well or both, there remains a balance of $6,766.00 to be attributed to the value of 4.012 acres, which according to our computation, places a per acre value of $1,686.00. Thus it can be seep that the value ascribed to the portion taken is higher than the appraisers for the State, but lower than the appraisers for the defendants. We cannot say that the value assigned by the trial judge is manifestly erroneous. Our reason for reaching this conclusion is primarily based on the fact that the comparables used by each of the appraisers are not in the immediate vicinity of the property expropriated. Actually, there are none. Each appraiser had to take what, in his opinion, constituted a reasonable comparable and then make adjustments as he deemed necessary. It will serve no useful purpose here to recite in detail the numerous comparables used by these four appraisers. They consisted of transactions dating from as early as February, 1967 to as late as May, 1970, with tracts ranging in sizes from .8 acres to 217 acres, at prices per acre ranging from $800.00 to $3800.00. One of the transactions used as a comparable closest to the property sold at an *239 average cost of $3,815.00 per acre. Yet the appraiser using this comparable assessed the value of defendants’ land at $2,000.00 per acre. Obviously, he made adjustments for improvements. Without the benefit of the transcript and his reasons for doing so, we cannot accept this particular comparable as justifying an award higher than that made by the trial judge. From a reading of the appraisals it is obvious to us that each appraiser made adjustments and the trial judge undoubtedly gave appropriate weight to the testimony of each appraiser in determining the value he placed on the property.
The trier of fact in an expropriation proceeding is not required to accept in toto the testimony of only one witness but may accept and give greater weight to those portions of the testimony of each witness which, in his opinion, he determines to be more reasonable and logical, such being a necessary correlative of a trial judge’s right to evaluate the weight he is to accord the testimony of each witness. State, Department of Highways v. Salassi, 244 So.2d 871 (1st La.App.1971). In essence, the determination as to the value of expropriated property is a factual one and should not be disturbed on appeal unless the reviewing court is convinced such findings are obviously wrong. State, Department of Highways v. Christ Baptist Church, 197 So.2d 83 (1st La.App.1967) and Salassi, above.
We now turn to the question of severance damages. As stated above, the expert witnesses for the plaintiff were of the opinion that the defendants were not entitled to any severance damages. Contrarily, defendants contend that the remainder of the property has been damaged and base their opinion on the following factors:
(a) The remainder of the tract no longer has the same shape as the original tract;
(b) That the original was rectangular with improved road frontage on three sides, and the remainder would be irregular in shape, particularly on the south and western end where the part taken affects the tract;
(c) That the taking reduces the front footage on improved roads from 3944 feet to 3340 feet;
(d) That the remainder would be adjacent to a heavily traveled interstate highway system and subject to noise, vibrations and fumes which would be detrimental to the highest and best use as rural, residential homesites;
(e) That the taking for the interstate would remove the property from its proximity to the industrial area on the Mississippi River to the extent that it would be separated from direct access to the river by a two mile detour by a circuitous route. Again, we are confronted only with the written reports of the appraisers without the benefit of any testimony giving their reasons for concluding that these factors result in severance damages to the remainder of defendants’ property. There is no evidence before us that at the time of the trial there was a demand in that area for the sale of small rural residential sites. Undoubtedly in time this property may well be subdivided and sold in tracts of from two to five acres. While the reduction of road frontage is a factor to be considered in determining severance damages, absent more positive testimony on this point, we are not in a position to say two appraisers are correct in their assessment of damages and two appraisers are in error for their failure to do so, particularly, when each of these appraisers was accepted by the court and from the face of their reports, their qualifications and expertise appear equal in every respect. It is a situation where reasonable men may disagree. The trial judge heard each testify and concluded that there were no severance damages. We think, by observation, that the property is located on the Gonzales side of the interstate, which would make it more advantageous for residential purposes than it would be if the construction of the inter *240 state had placed the subject property to the west of the interstate, thus making it more difficult to get to the nearest town, schools, shopping, churches, etc. Frankly, as this record stands before us, we have here an interstate traversing a rural, undeveloped area, and to assign any one of these factors as a basis for levying severance damages would be highly speculative.
Accordingly, for the above reasons, the judgment of the district court is affirmed at defendants’ costs.
Affirmed.