319 So.2d 568 (1975)
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS
v.
NEW ORLEANS TERMINAL COMPANY.
No. 6591.
Court of Appeal of Louisiana, Fourth Circuit.
June 16, 1975.
Rehearing Denied October 9, 1975.
*570 Johnie E. Branch, Jr., D. Ross Banister, William W. Irwin, Jr., Jerry F. Davis and Alva J. Jones, Baton Rouge, for plaintiffappellee.
Monroe & Lemann, Malcolm L. Monroe, Benj. R. Slater, Jr., Walter J. Suthon, III, and Herman C. Hoffmann, Jr., New Orleans, for defendant-appellant.
Before SAMUEL, GULOTTA and SCHOTT, JJ.
SAMUEL, Judge.
Acting under the provisions of LSA-R. S. 48:441-460, the Department of Highways instituted this suit expropriating for highway purposes certain property belonging to the defendant New Orleans Terminal Company. At the time suit was filed the Department deposited $59,518.50 in the Registry of Court as its estimate of just compensation for the property. Nothing was deposited for severance damages. Appellant answered, contesting the value of the land taken and averring its true value, including severance damages, was $235,000.
After trial there was judgment placing the value of the expropriated land at $92,138.90 and rejecting the claim for severance damages. Defendant has appealed.
The property expropriated consists of five parcels of land. With the exception of Parcel 8-15 (zoned RD-2, two family residential), which runs along St. Bernard Avenue, all of the property taken lies within the defendant's railroad right of way which traverses City Park in an east-west direction between Bayou St. John and Marconi Drive in the City of New Orleans and is zoned P-Park (dedicated park and recreational). Prior to the taking, the right of way measured 100 feet in width, the major portion of which contained defendant's two main line tracks and the embankment on which they are constructed. A strip measuring approximately 30 feet in width was taken from the northern side of the tracks. Parcel 4-3, measuring 2,900 feet in length and containing 70,784 square feet, and Parcel 8-15, a triangular plot containing 682 square feet, were acquired in full ownership. In addition, a permanent drainage servitude was acquired over Parcel 4-3-D-1 (1,360 square feet) and temporary (3 year) construction servitudes were acquired over Parcels 4-3-C-1 (900 square feet) and 4-3-C-2 (1,313 square feet). The taking of Parcel 4-3 reduced the right of way from 100 feet to 70 feet and would prevent the railroad from constructing a third, or siding, track (also known as a spur track) in that area. The communications system, consisting of wires strung between poles, remained intact following the taking, but three of the poles encroached over the expropriated right of way. There are no buildings or other improvements situated wholly or partially on the property. The expropriation was made subject to the reservation in perpetuity in favor of defendant of all oil, gas or other mineral rights or royalties therefrom in accordance with LSA-R.S. 9:5860. The purpose of the taking was in connection with the construction of State Highway Route 1-610, known as the New Orleans By-Pass, *571 a part of the Interstate System of Highways.
The appellant contends, in accordance with the testimony of its experts: (1) the compensation for the property taken should be increased; and (2) severance damages should be allowed. Each litigant produced two expert appraisers; Omer F. Kuebel and John M. Parker, III testified on behalf of the defendant, and Charles L. O'Brien and Lennis X. Lamulle testified on behalf of the plaintiff.
Mr. Kuebel testified: The highest and best use of the property was for industrial purposes. He felt this type of appraisal was unusually difficult because a railroad ordinarily does not sell its right of way. He considered nine industrial sales, giving most weight to four sales covering spots on both the north and south sides of the railroad right of way east of Bayou St. John because of their closeness to the expropriated property. Relying on the economic principle of substitution (i. e., the value of the property tends to be set by the cost of acquiring an equally desirable substitute property), he was of the opinion that if used for industrial purposes the land, other than Parcel 8-15, would range in value between $1.70 and $1.80 per square foot. Thus, he arrived at a fair market value of $1.75 per square foot for that property. He appraised Parcel 8-15 at $2.45 per square foot. He appraised the permanent servitude over Parcel 4-3-D-1 at 90% of full ownership and the temporary servitudes over Parcels 4-3-C-1 and 4-3-C-2 at 8% per year for three years as a rental value. His total estimate of the value of all the land taken was $128,607.24.
Mr. Kuebel was of the further opinion that severance damages were due for the cost of relocating communications lines and also for the loss of utility of the remainder of the tract by the taking of 30 feet of the original 100 foot strip because the amount of land expropriated would prevent the future construction of a third, or spur track. Thus, the value of the remainder would drop $0.10 per square foot. He concluded the total valuation of the expropriated property, including severance damages, was $191,414.05.
The testimony of Mr. Parker, defendant's other expert, was generally in accord with that of Mr. Kuebel, although there was a variance in the square foot evaluation, in the appraisal of the permanent servitude (Mr. Kuebel gave that servitude 90% of the value of the parcel and Mr. Parker gave full value) and in the appraisements of the temporary servitudes which Mr. Parker set at 10%, as opposed to Mr. Kuebel's 8%, per year for three years. While Mr. Parker concurred that the highest and best use was for industrial purposes, based on six industrial comparables, he valued all parcels at $1.90 per square foot. He concluded the value of the property (exclusive of severance damages) was $139,629.
Mr. Parker also was of the opinion that the remaining portion of the property after the taking suffered an overall loss of 10% and consequently he allowed $72,079 for this portion, and $23,000 severance damages for the cost of removing signal lines in the communications system, making a total overall valuation of $234,708.
Mr. O'Brien, a Department appraiser, testified: The highest and best use of the property was its continued use as a railroad right of way considered as if vacant and valued as part of the adjoining acreage. He considered the problem in the light of how much the railroad would have to pay for the land if they were going through City Park under their expropriation authority. Since the surrounding property was residential, its replacement was valued as residential property. He estimated the value of the property at $35,000 per acre. Translating this to $0.803 per square foot and subtracting the allowances for servitudes (he used the full value of Parcel 4-3-D-1, over which there is the permanent servitude, and 10% per year, or a total of 30%, of the value of *572 Parcels 4-3-C-1 and 4-3-C-2 for the temporary servitudes over those parcels), his total valuation of the property taken was $59,056.
Mr. O'Brien found no severance damages due because the land had no utility other than its legal nonconforming use as a railroad right of way. The taking in no place touched any of the ballast, crossties, signal poles or anything else that would contributed to the utility of the property as a railroad right of way. He likewise found no damage to the present communications system and concluded that if the poles were straightened to perpendicular there would be no encroachment. He allowed no severance damages for lack of ability to construct a third track since the railroad had not utilized its right to build the third track during the seventy years it had been in existence and the present zoning ordinance (P-Park), he felt, would prohibit such construction.
Regarding claimed severance damages, Mr. O'Brien concluded the only thing taken from defendant was the 30 foot strip of flat land which was not being used and which was not contributing in any way to the use or maintenance of the railroad right of way or the main line, and defendant had been paid for the land taken. After the taking they still had two main lines, one running in an easterly and one running in a westerly direction, a signal communications system and whatever other appurtenances were necessary such as battery boxes for the operation of the railroad.
Mr. Lamulle, who also testified for plaintiff, stated: Insofar as the trackage area was concerned, its present use as a railroad was its highest and best use with an alternate use for recreational purposes. This appraisal was based on the fact that the right of way which traverses City Park is a legal nonconforming use and if the property was not used for railroad purposes it would come under P-Park classification and it could not be used for anything else. Thus, inasmuch as the property was the equivalent of vacant or unimproved land, he used comparable residential sales as a guide to estimate the market value, arriving at a valuation of $0.778 per square foot. He placed a value of $1.50 per square foot on Parcel 8-15, gave the full value for the permanent servitude over Parcel 4-3-D-1, and gave a total of three years 10% annual return (or 30%) of their total values for the temporary servitudes over Parcels 4-3-C-1 and 4-3-C-2. He concluded the total award due for the property taken was $58,397.
Mr. Lamulle found no severance damages due because the part taken did not affect the operation of the main track of the railroad and defendant had all of the uses of the property subject to the zoning classification which they had prior to the taking.
In his reasons for judgment the trial judge evaluated the property at $1.25 per square foot for all of the parcels with the exception of Parcel 8-15 which he evaluated at $1.90 per square foot. As we have said, he rejected the claim for severance damages. The total compensation he allowed was the sum of $92,138.90, as follows:

Parcel 4-3
 70,784 sq. ft. at $1.25 per sq. ft. or $88,480.00
Parcel 4-3-D-1
 1,360 sq. ft. at $1.25 per sq. ft. or 1,700.00
Parcel 4-3-C-1
 900 sq. ft. at $1.25 per sq. ft. at
 8% for three years rental or 270.00
Parcel 4-3-C-2
 1,313 sq. ft. at $1.25 per sq. ft. at
 8% for three years rental or 393.90
Parcel 8-15
 682 sq. ft. at $1.90 per sq. ft. or 1,295.00
 __________
 TOTAL COMPENSATION $92,138.90.

We first address ourselves to the value of the property expropriated. The trier of fact in an expropriation proceeding is not required to accept in toto the testimony of any one witness or any one group of witnesses; he may accept and give greater weight to those portions of the testimony of each witness which in his opinion are more reasonable and logical, *573 such being a necessary correlative of a trial judge's right to evaluate the testimony.[1] In essence, the determination as to the value of expropriated property is a factual one and should not be disturbed on appeal unless the reviewing court is convinced such findings are clearly erroneous.[2]
One of defendant's two expert witnesses appraised Parcel 8-15 at $2.45 per square foot, while its other expert witness was of the opinion that parcel had a value of $1.90 per square foot. The plaintiff's expert witnesses, respectively, arrived at a valuation of $0.803 and $0.778 per square foot for all of the property, including Parcel 8-15. The trial judge evaluated that parcel at 1.90 per square foot and awarded compensation accordingly. Thus, the court's evaluation was higher than those of the two plaintiff witnesses, lower than the appraisal made by one of the defendant's witnesses and exactly the same amount as the appraisal of the other defendant witness. Under these circumstances we cannot say the compensation awarded for Parcel 8-15 was inadequate.
Insofar as the balance of the property taken is concerned, the basic difference between the amounts claimed by the defendant and the amounts awarded in the judgment appealed from is the difference in values of property which is industrial, residential, or other. Industrial has a greater value than does residential. Plaintiff's witnesses used residential comparables, while defendant's witnesses used industrial comparables.
There are, understandably, no available comparable sales for railroad rights of way or dedicated park or recreational lands and the trial judge was of the opinion the railroad right of way (i. e., the lands taken other than Parcel 8-15), which runs through the park, could not be classified as either industrial or residential. He therefore refused to accept any of the appraisals given by the expert witnesses. While the four witnesses respectively appraised the right of way at $1.75, $1.90, $0.778 and $0.803 per square foot, the court evaluated that property at $1.25 per square foot. We agree with his reasoning and we cannot say that $1.25 per square foot is inadequate.
This basic difference in the valuation placed on the right of way applies not only to the parcel taken in full ownership, but also to those parcels over which servitudes were taken. Regarding the two temporary (three year) servitudes, the trial judge accepted the formula of 8% for three years (or 24%) rental or return as suggested by Mr. Kuebel, defendant's appraiser. However, he applied this formula to the full amount determined by him to be the value of the parcels, rather than the 90% of full value as used by Mr. Kuebel. The other three appraisers used 10% of full value. We cannot hold that the small amount of difference, 2% or less, between the court's conclusion and the opinions of the expert witnesses constitutes error.
We now consider the remaining question, severance damages. As stated above, plaintiff's expert witnesses were of the opinion the defendant was not entitled to any severance damages. Contrarily, defendant's witnesses felt the remainder of the property had been damaged, basing their opinions on the following factors: (1) damages to the communications system; and (2) as a result of taking 30 feet of a strip 100 feet in width, the railroad no longer can add a third, or spur, track.
Testimony relative to severance damages was given by Mr. Gary Skeen, a civil engineer, Mr. Sam Sherard, defendant senior *574 signal engineer, Mr. Arthur Flotte, the Department's project engineer, and Mr. Wallace Mack, the Department's utility engineer. The present communications system consists of poles, cross arms, and wires extending along the track. Although the evidence is confusing and unclear on this particular point, it appears that, due to the fact that they leaned, the cross arms and wires of four of the poles extend over into the highway right of way as taken. The encroachment could be eliminated at a cost of $60,000 if a coded track system were installed, thus requiring no poles. The same thing could be accomplished by underground cables at a cost of $23,000. There is also testimony to the effect that it would cost $300 to relocate each of the poles which encroach, and further testimony that it would cost only $30 per pole to straighten the encroaching poles upright and thus eliminate any encroachment. Mr. Mack testified that after the encroachment was discovered he contacted the federal highway administration and it was agreed that the defendant would not be required to relocate its poles.
Insofar as the communications system is concerned, the trial court held the minimal encroachment could have been cured had the defendant seen fit to straighten its poles to an upright position and, of greater importance, as there was and would be no objection to the overhang encroachment, the system remained intact as it was prior to the taking. Accordingly, he held no severance damages were due. We cannot agree with this relatively small portion of the judgment.
The defendant is entitled to have its poles, and the cross arms and wires thereon, located within the boundaries of its own property despite the agreement by some officials in the state and federal highway administrations that the defendant would not be required to relocate the poles in question. Such an agreement certainly does not constitute a servitude. Thus, as we are satisfied from the record before us that two of the offending poles must be relocated in order to eliminate encroachment by them, we will increase the award by the sum of $600, the proven cost of relocation. We are also satisfied from the record that the encroachment of the other two poles can be eliminated by straightening those poles and we will further amend the judgment by adding thereto the sum of an additional $60, the proven cost of straightening.
Although the reduction of land width is a factor to be considered in determining severance damages,[3] we also find no such damages were due as a result of the 30 foot reduction of the 100 foot right of way. While there was considerable argument in this court and in the trial court regarding whether or not a third track could be constructed on the original right of way in view of the P-Park zoning, the testimony reflects that at the time of the taking and for sometime thereafter there was no intention on the part of the railroad to construct a third track. In addition, there is no showing of any defendant need, now or in the future, for a spur track on the property taken; in fact, the evidence offered by the defendant is to the contrary. Accordingly, we agree with the trial judge's conclusion that the effect of the P-Park zoning need not be considered because, regardless of the conclusion on that question, no severance damages are due as a result of the reduction, in the width of the right of way. In his Reasons for Judgment, he said:
"Notwithstanding the argument as to whether, because of its right of way passing through City Park, the railroad could or could not construct a third track in the land taken from it (that is to say, pretermitting the argument of zoning regulations allowing or disallowing such construction), the Court is of *575 the opinion that the railroad has suffered no proven severance damages. The evidence is, if ever and whenever this railroad's operations in the New Orleans area become such that it may have need for a third track, they would like to avail themselves of the right to construct it here in the land being taken. As of trial date, that need does not exist, there is no third track and no definite plans for same. The claimed severance damages as they relate to third track construction are too speculative and too remote to constitute a basis upon which to award damages. The vice president of the defendant railroad company under questioning from the Court, admitted that three years prior to the taking, and for as much as three years after the taking, his company had no plans for an additional or third track in the City Park area, nor had his company appropriated any funds for such construction, nor was it anticipated in the forseeable future that a third track would be installed. As of the date of the trial, the defendant railroad company had only speculative, conjectural and very remote notions, let alone plans for additional tracks, in this area. . . . The defendant railroad has not carried the burden of proving its severance damages . . . The two main lines of the railroad company are still in operation, as they have been for over 70 years."
For the reasons assigned, the judgment appealed from is amended so as to increase the award by the sum of $660. As thus amended, and in all other respects, the judgment appealed from is affirmed. Each litigant shall pay its own costs of this appeal, if any.
Amended and affirmed.
PER CURIAM.
In its application for rehearing defendant contends that we were in error in refusing to allow severance damages to the remainder of defendant's property by virtue of the 30 foot reduction of its 100 foot right of way. We held that defendant's claim for such damages based upon the property's lost potential for the construction of a third track was too speculative and too remote to support an award for damages. Defendant relies on State, Dept. of Hwys. v. Denham Springs-Dev. Co., Inc., La., 307 So.2d 304, S.Ct. (1975).
In that Case the Court allowed severance damages based upon the loss of potential for future development of a shopping center as a result of a decrease in parking area. The Court said:
"After careful review of the record, we are convinced that defendant has adequately proven severance damages by a preponderance of the evidence. Defendant, by this taking, was deprived of the full potential of future development of this shopping center due to the loss of parking area. Defendant is entitled to recover for this damage to the remainder. Accordingly, we conclude that the trial judge was correct in the award of severance damages, and the court of appeal erred in reducing this amount."
The proof offered by the defendant in the instant case does not support an award for such damages for loss of potential as it did in the cited case. H. C. Mauney, Vice President of defendant, testified that before the taking there was room for the construction of a third track for passing or siding and that after the taking this potential was lost, but when asked whether there were other portions of the railroad right of way in Orleans Parish which would be suitable for such a passing or siding track of the size that could have been constructed on the property taken he stated that there were two other areas where a suitable passing track could be constructed if defendant acquired some additional property in these areas. Defendant was paid adequate compensation for the property taken and it can easily use these funds to acquire such additional property. By the *576 testimony of its own vice president, after the acquisition of such additional property it will be in the same position it was in with respect to the potential for the construction of such a passing or siding track as it was before the taking except that the location would not be in the same identical place.
In the case cited the potential for expansion of the remainder of the property was a characteristic peculiar to the property involved, whereas in the instant case the loss of potential for the construction of a third track in the particular area was of no consequence since the same potential exists in at least two other places not far away from the property taken.
Accordingly, the application for rehearing is denied.
NOTES
[1] State, Department of Highways v. Ourso, La.App., 294 So.2d 235; State Department of Highways v. Salassi, La.App., 244 So.2d 871.
[2] State, Department of Highways v. Ourso, supra, footnote 1; State, Dept. of Highways v. Christ Baptist Church, La.App., 197 So.2d 83.
[3] See State, Department of Highways v. Ourso, supra, footnote 1.