322 So.2d 383 (1975)
STATE of Louisiana, Through the DEPARTMENT OF HIGHWAYS, Plaintiff-Appellee,
v.
Darrel V. WILLET, Sr., Defendant-Appellant.
No. 5213.
Court of Appeal of Louisiana, Third Circuit.
November 20, 1975.
*385 Gold, Hall, Hammill & Little, by Charles S. Weems, III, Alexandria, for defendant-appellant.
Chris Fruge, Ville Platte, for plaintiff-appellee.
D. Ross Banister, Jesse S. Moore, Jr., William W. Irwin, Jr., Jerry F. Davis, Baton Rouge, Darrel Van Willett, Jr., Pineville, Polk, Foote, Randolph, Percy & Ledbetter, by William H. Ledbetter, Jr., Alexandria, for defendant-appellant.
Before MILLER, WATSON and CUTRER, JJ.
WATSON, Judge.
This is an expropriation case involving basically the value of the land taken. The trial court granted judgment for $106,430. The expropriating authority had deposited $85,926. The landowner appeals, contending that he is entitled to a sum substantially in excess of the award.
The plaintiff-expropriating authority is the State of Louisiana through the Department of Highways (hereafter referred to as the Department) and the landowner is Darrel V. Willet, Sr. (hereafter referred to as Willet). The property taken under the so-called "quick-taking statute", LSA-R.S. 48:441 et seq., consists of five tracts or parcels of land, (identified by the Department in its petition and throughout the proceedings as "Advance No. 1" through "Advance No. 5"), all consisting of various groups of lots in Aurora ParkUnit 2 Subdivision of Rapides Parish, Louisiana. A total of 32 lots were taken from the subdivision which originally contained 49 lots. These tracts are located in an area near but not fronting on U. S. Highway 71 near its intersection with U. S. 167. Just adjacent to the property to the west is the Dresser Industry Valve Plant, a large manufacturing plant employing several hundred people. The subdivision had been partially developed at the time of taking, but work stopped in September, 1972, when the owner learned that the highway was going to be constructed through his property.
There were no buildings on the land taken, so the value to be determined is that of the lots themselves.
In the trial court, after hearing an expert for the Department of Highways, an expert for the landowner, and the landowner himself (who qualified as an expert appraiser), the trial court determined that the lots had a value of $60 per front foot and found a total value of the land of $120,430. The trial court deducted from this amount the cost to the owner to complete the streets and utilities, which was established in the record as $14,000. The trial court then made an award of $106,430 subject to a credit of the sum previously deposited by the Department, which was $85,926.00.
In the reasons for judgment, the trial court noted that the evidence presented was not what the court would have desired, the landowner's estimates of value being in the nature of a "feasibility study" or "cost analysis study" rather than an estimate of market value. The trial court also noted that the land is located in a rural area, where there is considerable undeveloped land. As to the landowner's contention that the property could be developed into a multi-family dwelling community, the trial court said the subdivision was largely undeveloped, making this evidence speculative. The trial court commented that the values furnished on the property by the landowner's appraiser and the landowner exceeded the front-foot values of lots located in the most exclusive subdivision in the City of Alexandria. The trial court rejected the idea that the front-foot value of lots in a rural area of the parish, in a multi-family dwelling subdivision next to an industrial plant, is more *386 than that of a lot in the exclusive residential area of the City of Alexandria.
The court stated that the testimony of the Department's appraiser was more acceptable than the testimony on behalf of the landowner. While the Department's appraiser placed a value of $45 per front foot or less on the various lots, the trial court set a value of $60 per front foot, apparently giving some weight to the fact that Willet intended to develop the property for multi-family residences rather than single-family residences and possibly giving some consideration to the failure of the Department to call one of its experts who had made an appraisal. Only Willet, the landowner, has appealed; the Department has not appealed and we are not faced with a contention that the award was excessive, only that it is inadequate.
Issues
On appeal, we will consider the following issues:
(1) Is the amount awarded for the value of the land inadequate? (A subsidiary issue is whether the failure of the Department to call an expert who had appraised the property on behalf of the Department gives rise to a presumption that the expert would have testified against the Department and, if so, what weight should be placed on this presumption?)
(2) Did the trial court err in computation of the award and, if so, in what amount?
(3) Is the landowner, who qualified and testified as an expert, entitled to an expert witness's fee?
(4) Is the bill of a photographer who made an aerial photograph of the property taxable as court costs?
Value of the Land
As to the value of the land, only three experts testified. All qualified and were recognized as expert appraisers and all appear to have given a careful and thorough consideration to the appraisal of the particular tract in question.
The Department's expert was M. C. Gehr, who made his conclusions of market value as of February 12, 1973, prior to May 15, 1973, the date of taking. Counsel for Willet argues strenuously that Gehr's opinion must be rejected because of this variation in dates. However, the record reflects that the property had no different value on the two dates. Work had halted on the subdivision, as noted above, in September, 1972, and there is no indication in the record of any change in the condition of the land or its value between February and May, 1973. We do not regard as significant the fact that Gehr's appraisal was dated three months prior to the taking.
Lex non curat de minimis.
Gehr stated that, in his opinion, the highest and best use of the property was for residential single-family dwellings. He said the subdivision was composed of 49 lots on which 6 duplexes had been constructed. His opinion was that it would not be feasible to build 49 duplexes in the area, the property taken being most suitable for single-family residences.
Gehr referred to sales of lots in subdivisions of a similar type: in Fairway Estates, the lots sold from $25 to $41.50 a front foot; in Pinebrook Estates from $35.71 to $37.50; in North Park, from $33 to $44 a front foot; and in High Chaparral from $33 to $37 a front foot. Fairway Estates is near to the subject property on the west and Pinebrook is not far to the east. North Park is some distance to the south and lies between the subject property and Pineville. High Chaparral is not in the area of the property taken and the comparables there are of doubtful significance.
After analyzing his comparables, Gehr assigned a basic value of $45 a front foot to the lots taken.
*387 The property taken was considered in five portions, referred to as Advance No. 1 through Advance No. 5. Gehr adjusted the $45 a front foot because of lack of sewerage, and other utilities, or lack of blacktop streets in the various parcels.[1] He valued Advance No. 1 at $41 a front foot; certain lots in Advance No. 2 at $41 a front foot and certain lots at $47.50 a front foot (the latter had electricity, water, sewerage, and blacktop streets); Advance No. 3 at $45 a front foot for certain lots; Advance No. 4 at $43.50; and Advance No. 5 at $43.50.
The comparables used by Gehr are contained in his reports, copies of which were filed in the record.
Gehr was cross-examined closely on the question of highest and best use. Gehr acknowledged that the property taken had many attributes making it desirable for multi-family development, but pointed out that these attributes are basically the same for single-family residential property.
A subsidiary issue arises from the failure of the Department to call one Core, who appraised the property on behalf of the Department. The owner contends on appeal that the failure to call Core must be construed against the Department. We note that the amount awarded by the trial court is substantially in excess of the value found by appraiser Gehr. We agree with the contention that the failure to call Core must be construed against the Department, and we believe that the trial court did so adequately by increasing the allowance of value per front foot to $60 rather than the basic $45 as appraised by Gehr.
The landowner presented Habeeb Monsur, Jr., an appraiser and realtor of Alexandria. Monsur was recognized as an expert appraiser. He said that in his opinion the highest and best use of the subject property is for multi-family dwellings. He selected four comparable sales of multi-residential development property, the prices ranging from $100 to $105 per front foot. These comparables were located in the metropolitan area of Alexandria and Pineville rather than in a rural area as is the subject property. Monsur assigned a value of $90 a front foot to the property taken and calculated the front footage at 2,122.55 feet, extended at $90 a front foot, for a total of $191,029.50. He subtracted $14,000, the cost of completion, from the total figure, leaving a value for the land taken of $177,029.50.
The landowner, Darrel V. Willet, Sr., testified as an expert on his own behalf. His expertise as an appraiser was recognized by the trial court. In weighing the evidence, the trial court in effect said that Willet's testimony was directed at the development of the property into a multi-residential communitynot at the appraisal of the property as it existed. We do not find error in the evaluation of Willet's testimony by the court, especially considering his status as owner.
While the owner's testimony in the capacity of an expert may be considered (State, Department of Highways v. Rapier, 246 La. 150, 164 So.2d 280, 1964), it should be viewed with caution as would be the testimony of any other witness who has an interest in the outcome of a lawsuit. The owner-expert's testimony should not be rejected merely because he is a party; neither should it be accepted without qualification merely because he is an expert.
Willet put an average value of 99¢ a square foot on the sale of various comparables in the Pineville area for multi-family development. He gave his own property value of 75¢ per square foot and calculated a total of $178,563. This was slightly *388 higher than that of Monsur and considerably higher than that of Gehr.
Willet mentioned a square footage value of 60¢ in Charles Park, an exclusive subdivision in Alexandria. The trial court rejected the idea of a higher value for the rural subdivision property, whether single-family or multi-family residential, than for property in Charles Park.
After considering the testimony of the experts, we find no error in the trial court's conclusion that the subject property had a front foot value of $60. We agree with the comment by the trial court that the expert, Gehr, seemed to have a better idea of the value of the property taken than did Monsur or Willet, the landowner. Considerable emphasis has been placed on the question of whether the highest and best use is for single-family residential or multi-family residential.
The evidence establishes that the property is most suitable for residential use. The experts differ on whether it is most suitable for single-family or multi-family residential purposes. The only real difference between these lots and the lots in the other subdivisions referred to by Gehr is that there are no restrictions placed on the lots by the subdivider, which may have any number of consequences. The lack of restrictions does not automatically give a highest and best use as multi-family.
The trial court declined to consider this land in the same light as apartment complex property in Alexandria or Pineville. We hold that he was not manifestly in error.
An excellent definition of market value is found in State, Department of Highways v. Rapier, 246 La. 150, at 164 So.2d 280 at 282.
". . . market value means the worth of the land considered in the light of its best and highest use, this being the most favorable employment to which the property is adaptable and may reasonably be put in the not too distant future."
The trial court did not state a conclusion as to the exact highest and best use of the land, whether single or multi-family residential, but indicated reservations about its being multi-family residential, saying Gehr had the best idea of the property's potential.
We find no error in the trial court's acceptance of Gehr's appraisal and the allowance of a value in excess thereof. The excess allowance adequately covers the potentialities of the land as multi-family residential.
Even if the trial court concluded the property had its highest and best use as multi-family residential, the comparables used by Monsur and Willet are far removed from the subject property and dissimilar in character. The trial court had no comparables in the record which had the character of rural duplex lots. Even though income method may be used when appropriate, study of comparables is still the primary tool of analysis. State Department of Highways v. Crow, 286 So.2d 353 (La.1973). On the record before us, we find no error in the trial court's ultimate conclusion to allow $60 per front foot. The object is just and adequate compensation, and we believe that end was achieved here. State, Dept. of Highways v. Terrace Land Co., Inc., 298 So.2d 859 (La., 1974).
Errors of Computation
The landowner makes an alternative contention that if the trial court did not err in fixing the value per front foot of the property taken, then the trial court made certain errors in computing the award.
As to Advance No. 1 and Advance No. 2, Willet contends that the trial court erred in not averaging the front width of the *389 lots with the rear width because the lots were wider on the back than on the front. We have been cited to no authority to the effect that the trial court is required to determine front footage by the suggested procedure. We note that the trial court allowed front footage (or declared he was doing so) on both streets of corner lots, thus giving a much higher value to the corner lots than to the non-corner lots. By calculating footage on both streets of the corner lots, the trial court compensated for any prejudice that may have resulted to the landowner for failing to average the front and back measurements of the lots. In addition, we note that there are some lots such as Lots 18 and 28, to mention only two, that are wider on the front than on the back so Willet benefited from the failure by the trial court to average the widths. The same argument is presented by Willet as to a portion of Advance No. 4. For the same reasons, we conclude that the trial judge did not err as to this portion of his calculations on Advance No. 4.
However, Willet points out that the trial court omitted inadvertently certain frontage in Advance No. 3 and Advance No. 4. We have calculated the frontage in these Advances and we are convinced that Willet is correct in his suggestion that the trial court omitted 120 feet for Lot 30 and 110 feet for Lot 31, or a total of 230 feet in Advance No. 3. Likewise, we are convinced that the trial court omitted the frontage for Lots 35 and 36, totaling 125 feet in Advance No. 4.
As to Advance No. 5, Willet candidly admits that he was allowed five feet too much through an error by the trial court in totaling the footage of Lots 43 and 44.
Therefore, Willet is entitled to an additional award for 230 feet in Advance No. 3 and 125 feet in Advance No. 4, less five feet in Advance No. 5, or a net increase of 350 front feet.
Also, there was an error of calculation by the trial court in that the correct extention of the allowance of $60 per front foot times the 2,008.5 feet of frontage which the trial court used, should have been the sum of $120,510 rather than the sum of $120,430, as calculated by the trial court.
Therefore, we will correct by amending the award of the trial court, properly calculated at $120,510 plus an award of $21,000 for the frontage omitted by the trial court less the cost of completing the development, $14,000. The award is fixed, therefore, at the sum of $127,510, subject to the credit for deposit made by the Department.
Landowner as Expert
A contention is made that the landowner should be awarded an expert witness fee since he appraised the property and testified. The trial court did not award Willet a fee, although he was allowed to qualify as an expert and to give his expert opinion. We find no error in this procedure. Landowners, who incidentally are expert appraisers, are not entitled to fees for appraising and testifying in court proceedings involving their own properties. We find no error in the trial court's declining to award Willet a fee.
Photographer's Fee as Court Costs
However, the trial court failed to include in the court costs the bill of an expert photographer for an aerial photograph of the subject property. This exhibit is an excellent photograph and is very helpful to the court. A party is entitled to recover as costs expenses of this nature. Westwego Canal & T. Co. v. Louisiana Highway Com'n, 200 La. 990, 9 So.2d 389 (1942). The judgment of the trial court is amended to tax as court costs the sum of $182, representing the cost of the aerial photograph.
For the reasons assigned, the judgment of the trial court is amended to increase the award to the sum of $127,510, subject to credit for the amount deposited by the *390 Department, and to include the additional sum of $182 for the aerial photograph as court costs.
Costs of this appeal insofar as provided by law are taxed against the Department of Highways.
Amended and affirmed.
NOTES
[1] The various parcels, or "Advances", and various lots within the parcels had different decrees of completed utilities and streets. There is no point in itemizing these features because there is no dispute between the parties to which these details are relevant; the dispute boils down to single-family residential versus multi-family residential.