468 So.2d 1262 (1985)
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION & DEVELOPMENT, Plaintiff-Appellant,
v.
Taine E. HENRY, et als, Defendants-Appellees.
No. 84-256.
Court of Appeal of Louisiana, Third Circuit.
April 10, 1985.
Rehearing Denied May 14, 1985.
*1264 Bryan Miller, Baton Rouge, for defendant-appellant.
J.M. Henry, Jr., Natchitoches, for plaintiff-appellee.
Before FORET, STOKER and KNOLL, JJ.
FORET, Judge.
This is an expropriation suit instituted by the State of Louisiana, through the Department of Transportation and Development, against defendants, Taine E. Henry, Joseph M. Henry, Jr., and Juanita Barberousse Henry, under the provisions of the quick taking statute, LSA-R.S. 48:441, et seq. The property which is the subject of this suit is located in Natchitoches Parish, and is held in naked ownership by defendant, Taine E. Henry, subject to a usufruct held by her parents, Joseph M. Henry, Jr. and Juanita Barberousse Henry. For the construction of Highway I-49, the State, through the Department of Transportation and Development, acquired the full ownership of one portion of the subject tract (designated as Parcels # 9-1 and 7-1); a permanent servitude of drainage over another portion (Parcel #6-1-D-1); and a temporary construction servitude over still another portion (Parcel # 7-1-C-1). The order of expropriation was signed on August 2, 1982, and the Department of Transportation and Development deposited $65,823 into the Registry of the Court as compensation for the expropriated property. The defendants answered the Department's suit, asking for a substantial increase in the amount of compensation.
As compensation for the property taken and severance damages, the trial court awarded defendant landowners $219,287.22, less the sum already deposited by the Department. Of the $219,287.22, $107,393.77 was for the parcels taken in full ownership; $8,912.18 for 2.14 acres which the court held was taken by isolation; $978.99 for the parcel taken in permanent servitude; and $101,725.90 for severance damages. In addition, the court awarded attorney's fees to defendant landowners in the amount of $12,500.00.
In its appeal, the Department of Transportation and Development has raised numerous issues which may be summarized as follows:
(1) Did the trial court commit manifest error in finding that the best and highest use of the subject tract was for mixed agricultural purposes (hay meadows, pecan production, and cattle raising)?
(2) Did the trial court commit manifest error in setting the value of the land used for pecan production?
(3) Was it manifestly erroneous for the court to conclude that a 2.41-acre parcel, designated as Parcel "X", was taken by isolation and its market value reduced to nothing?
(4) Did the trial court commit manifest error in fixing the amount of severance damages?
(5) Was defendant, Joseph M. Henry, Jr., entitled to attorney's fees for representing himself and the other defendants in this suit?
(6) Should legal interest be awarded on attorney's fees awarded in an expropriation case?
(7) Finally, did the court err either in awarding expert witness fees to some of defendants' experts or in awarding excessive amounts to others?

DESCRIPTION OF THE PROPERTY
The subject tract is rural property located in Natchitoches Parish[1]. Before the expropriation, the tract was already divided by La.Highway 493. A portion of the tract to the north of Highway 493 was an "intensely" managed pecan orchard made up of improved variety pecan trees and mature native pecan trees. The rest of the land was used for hay meadows and cattle pasture. The property was fenced and contained stock ponds, water wells, corrals, hay barns, and improved roads. The portion taken by the Department for construction of I-49 runs north and south across the tract and intersects Highway 493, which runs southeast and northwest, so as to form a large "X" with that highway, and *1265 divides the tract into four sections. Approximately 20 acres of the portion taken by the Department in full ownership was part of a pecan orchard. The remaining portion, 19.842 acres, was used for hay meadows or cattle pasture. The portion of the tract taken in permanent servitude (Parcel #6-1-D-1) and that portion over which a construction servitude was required (Parcel #7-1-C-1) also consisted of cattle pasture and hay meadows. Located in the remainder east of the I-49 alignment and north of Highway 493 is a parcel designated by the litigants as Parcel "X". This 2.41-acre[2] parcel lies on the northern boundary of the tract and, due to the presence of a large drainage ditch, it will be cut off from the rest of the tract after the construction of Highway I-49.

BEST AND HIGHEST USE
The trial court found that the best and highest use of the subject tract was for mixed agricultural purposes: raising cattle, pecan production, and hay meadows. The testimony of defendants' experts and the evidence gave ample support to this determination of the court. Both of defendants' real estate appraisers testified that this was the best and highest use of the tract. The tract was, in fact, both before the taking and at the time of trial, used for these mixed agricultural purposes.
The Department contended that the best and highest use of the subject tract was for row crops and that it would be more profitable to convert the whole tract to that use, including the pecan orchard. Much of the testimony of its experts in this regard was based on the general trend in the area toward row cropping. Such general observations, however, failed to take into account the particular nature of the pecan orchard on the subject tract, for example, that it had a large number of improved varieties, that it was being intensively managed, and that most of the trees were in their prime. Even the Department's own expert testified that, "a pecan orchard would basically produce about the same amount of income as cotton land" (which, according to his testimony, produced the highest crop rentals). Dr. Arthur Allen, an expert on pecan production, testified on behalf of the landowners as to the projected profits of the pecan orchard. Although the trial court considered this projection exaggerated the orchard's income potential, being based on ideal conditions, Dr. Allen's projections still indicated that the orchard had substantial income potential.
The record fully supports the trial court's conclusion that the best and highest use of the subject tract was for mixed agricultural purposes.

VALUE OF THE LAND USED FOR PECAN PRODUCTION
The Department contends that the trial court committed reversible error when it fixed the value of that portion of the tract used for the production of pecans. In this regard, the Department's first contention is that the trial court impermissively substituted its own opinion for that of the experts.
In expropriation cases, the trial court has much discretion to weigh the testimony of experts. Southwest Louisiana Electric Membership Corp. v. Duhon, 313 So.2d 366 (La.App. 3 Cir.1975), writ refused, 318 So.2d 52 (La.1975). Nevertheless, the opinion of a witness qualified and accepted as an expert should be given effect if it appears to be well grounded from the standpoints of sincerity and good reasoning. City of Lafayette v. Babineaux, 297 So.2d 220 (La.App. 3 Cir.1974); Cajun Electric Power Co-Op. v. Estate of Thomas, 408 So.2d 1001 (La.App. 2 Cir.1981). Where there appears no reason to reject an expert's opinion offered in an expropriation case, the court's substitution of its own opinion is manifest error. Cajun Electric Power Co-Op. v. Estate of Thomas, supra; State, Department of Highways v. Thurman, 231 So.2d 692 (La.App. 1 Cir.1970).
*1266 In the present case, the trial court had ample reason for rejecting the opinion of the Department's experts as to the value of pecan-orchard land. Having determined that the Department's experts had not correctly characterized the best and highest use of the tract, the opinion of these experts as to the value of pecan-orchard land had to be rejected since they were not based on the best and highest use of the tract as found by the court. Both of the landowners' expert real estate appraisers only gave their opinions as to the value of the underlying land without the pecan trees, and stipulated that the value of the pecan trees given by Dr. Allen had to be added to their appraisals in order to arrive at the true value of the pecan-orchard land. The trial court, however, found that Dr. Allen, an expert on pecan production, had over-valued the orchard since its projections of the income production of the orchard were based on pecan production under ideal conditions. As a result, the court was justified in not accepting the conclusions of any of the landowners' experts as to the value of pecan-orchard land.
In expropriation proceedings, the trial court's factual determination as to the value of property should not be disturbed absent manifest error. State, Department of Transportation & Development v. Van Willet, 389 So.2d 1346 (La.App. 3 Cir.1980); State, Department of Highways v. McPherson, 259 So.2d 33 (La.1972). The court based its valuation of pecan-orchard land on one particular comparable sale, which both of defendants' expert real estate appraisers included in their list of comparables. This comparable was a sale of the "Charlie Bates Orchard" for $3,698 per acre. The trial court considered this sale to be the best indication of the value of the pecan-orchard land.
The Department contended that this comparable was inappropriate because it was contained in a "country estate type of subdivision". The trial court, however, determined that this was not the case. Ray LaCaze, one of the landowners' expert appraisers, testified that the "Charlie Bates Orchard" was not contained in the subdivision, but that it had been part of a larger tract which had been split up into ten- to twenty-acre tracts and divided among family members. Barry Guillet, the landowners' other expert appraiser, testified that the Bates property was below the flood plain, which would render it unsuitable as homesites. We think that the trial court acted within its much discretion when it used this comparable to fix the value of the pecan-orchard land.
The Department has also argued that the trial court erred in fixing this portion of its award because it awarded an amount higher than the highest amount testified to by witnesses for the landowners. In fact, the value the court granted on pecan-orchard land was lower than the value placed on it by the landowners' experts. Both of the landowners' expert real estate appraisers expressly included Dr. Allen's estimate of the value of the pecan trees ($104,186.00) in their appraisals. As a result, the value of the pecan orchard taken by the Department as fixed by Barry Guillet was $169,500.00 for the underlying land, plus $104,186.00 for the pecan trees, or $273,686.00. Randy S. LaCaze fixed the value at $174,322.05 for the underlying land, plus $104,186.00 for the pecan trees, or $378,508.05. The trial court awarded $219,287.22, for full compensation which was lower than either of these appraisals.

PARCEL "X"
The trial court found that Parcel "X" was, in effect, taken by isolation and awarded its full value, $8,912.18, to the landowners. In so doing, we feel that the trial court committed manifest error. Although the value of Parcel "X" will be severely diminished by the presence of I-49 and the resulting isolation, the record clearly shows that this property will continue to have some value. Although Parcel "X" will be isolated from defendants' tract by a sizeable ditch, this parcel abuts property owned by others, and there is always the possibility of a sale to these owners. More importantly, as testified to by James McNew, one of the Department's expert real estate appraisers, the property still has *1267 value as timberland since timber could be cut and taken out during the dry season. Mr. McNew fixed the value of such timberland at $800 per acre. We will accept this as the value of Parcel "X"'s acreage. The court found, and we accept, that Parcel "X" contained 2.41 acres of pecan-orchard land valued at $3,698.00 per acre. Since the value of this land is reduced to $800.00 per acre, the landowners are entitled to $6,984.18 for damage to Parcel "X".

SEVERANCE DAMAGES
In fixing severance damages, the trial court relied on the testimony of Barry Guillet, one of the landowners' expert appraisers. In accordance with Mr. Guillet's testimony, the court found that the two parcels lying east of the I-49 alignment had been reduced in value from $1,685.00 per acre to $1,000.00 per acre "due to their change in shape and size and their isolation from the remainder of the farm". Since this area contained 68.904 acres, the resulting severance damages to these totaled $47,199.24[3]. In accepting Mr. Guillet's opinion as to the damage suffered by these two remainders, the trial court acted within its discretion. Mr. Guillet explained that the diminution in value of these remainders was a result of these smaller tracts being isolated from the larger tracts west of the I-49 alignment. Given their size and shape, Mr. Guillet testified that it would be more difficult to use these parcels for agricultural purposes and that their market value would be reduced accordingly. Mr. Guillet's testimony, in this regard, was supported by the facts and the trial court was entitled to rely on it in fixing this particular element of damages.
In its written reasons for judgment, the trial court stated that it found that the property lying west of the I-49 alignment did not suffer greatly as a result of the taking and construction of the highway since it was sufficiently large to be a profitable agricultural-producing unit. Nevertheless, the court held that some damage had been done to this property. It concluded that, due to the presence of I-49, it will be necessary to move cattle and equipment back and forth between the west and east portions of the tract. For this inconvenience, the court awarded the landowners $25,000.00. In doing so, the court erred.
As mentioned above, the court's award of severance damage for the two remainders east of the I-49 alignment was based on the fact that I-49 would isolate these remainders from the rest of the tract. Mr. Guillet calculated these damages by comparing the value of these remainders, when they were integrated into the whole tract, to the value they had as a totally separate economic unit. As a result, the damages to the remainders east of the I-49 alignment, assigned by Mr. Guillet and awarded by the court, were premised on the isolation of these remainders and the destruction of the economic unit. Having calculated the damage to these remainders in this fashion, the award of severance damages based on the cost of maintaining the economic unit constituted double compensation.
The last element of severance damage which the court awarded consisted of an amount necessary to add certain improvements on the remainders west of the I-49 alignment. Both before and after the taking, there were a number of improvements (a barn, stock ponds, etc.) located on the east side of the alignment, whose use for undertakings on the west side would be made more difficult by the presence of I-49. The court determined that in order to limit severance damages, it would be necessary to reproduce these improvements on the west side of the I-49 alignment. It set the cost of doing this at $29,500.00.
Severance damages are ordinarily calculated as the difference between market value of the remaining property immediately before and after the taking, taking into consideration the effects of the completion of the project in the manner proposed or *1268 planned. State, Department of Transportation & Development v. Van Willet, supra; State, Department of Highways v. Denham Springs Development Co., Inc., 307 So.2d 304 (La.1975). Although the Louisiana Supreme Court, in State Through Department of Highways v. Constant, 369 So.2d 699 (La.1979), awarded a landowner replacement costs, replacement costs as a measure of compensation remain an exception to the general rule. In Constant, the landowners-defendants operated a marina. The State, through the Department of Highways, expropriated the landowners' loading and parking area, which was essential to the landowners' marina business. In its opinion, the Supreme Court stressed the uniqueness of the property takenbecause of the presence of a low bridge, the location of the marina represented a "unique availability which gave the landowners a competitive edge". With respect to replacement costs, the Court said:
"We do not, by these rulings, announce any general principle that replacement cost is always the most appropriate measure of awarding a landowner compensation for the taking of a physical asset used in his business, nor that the depreciation of the former asset should never be considered.
Generally, we assume, the landowners may be compensated fully by other approaches than by awarding them the replacement cost of the improvement taken, especially where (unlike the present instance) the property is not shown to be both unique in nature and location and also indispensable to the conduct of the landowners' business operations on the site from which a part is taken."
The property involved in the present case is not unique with regard to its location or economic value. The landowners can be fully compensated by receiving the difference between the market value of the property before and after the taking.
Defendants' own expert, Mr. Guillet, testified that the market value of the tract west of the I-49 alignment would not be changed by the taking or the subsequent construction of I-49. Therefore, it was error for the court to award the cost of replacing or, more precisely, duplicating improvements.

ATTORNEY'S FEES
The Department contends that Joseph M. Henry, Jr. is not entitled to attorney's fees for representing the landowners since he was, himself, a defendant in the suit. We disagree.
LSA-R.S. 48:453(E) provides that reasonable attorney's fees may be awarded if the amount of the compensation deposited in the registry of the court is less than the amount of compensation awarded in the judgment. Such an award may not exceed 25% of the difference between the award and the amount deposited in the registry of the court. There is no question that Mr. Henry is, under the terms of the statute, entitled to the fee that the court awarded him. Nevertheless, the Department maintains that Mr. Henry is not entitled to a fee since he was, himself, a defendant. In support of this contention, the Department calls the attention of this Court to two cases. In the first of these, State, Department of Highways v. Willet, 322 So.2d 383 (La.App. 3 Cir.1975), the trial court had failed to award an expert witness fee to a landowner who, as an expert appraiser, had made an appraisal and testified in an expropriation proceeding involving his own property. In Willet, we found no error in the court's failure to award attorney's fees. The case now before us does not involve an expert witness fee. Rather, it involves attorney's fees which are expressly provided for in the quick taking statute. LSA-R.S. 48:453(E). We think this fact alone distinguishes the present case from Willet.
The other case relied on by the Department is Westenberger v. Bernard, 160 So.2d 312 (La.App. 4 Cir.1964), in which the court held that a plaintiff could not recover an attorney's fee for representing himself. We think that this rule should not apply to a defendant in an expropriation case. If we held otherwise, the time, effort, and expense which Mr. Henry invested in his defense of himself and the other *1269 landowners would be lost. We think that such a result would be clearly counter to the intent of LSA-R.S. 48:453(E) and the Louisiana Constitution of 1974, which requires that an owner "be compensated to the full extent of his loss". La. Const. 1974, Art. 1, § 4.
It is also important to note that the defendant was not only representing his own interest, but also the interest of his wife and daughter. In Hebert v. Neyrey, 432 So.2d 396 (La.App. 1 Cir.1983), an attorney representing his wife, who was the plaintiff in a suit, was allowed to recover attorney's fees. We think that Mr. Henry is entitled to attorney's fees for representing his wife and child despite the fact that he was also a party to the suit.

INTEREST ON THE ATTORNEY'S FEES
The Department argues that the court erred in awarding legal interest on the attorney's fees it awarded. We agree. The attorney's fees provided for by LSA-R.S. 48:453(E) do not bear legal interest. Attorney's fees do not form a part of the judgment insofar as interest thereon is concerned. State, Department of Transportation & Development v. Taylor, 461 So.2d 1282 (La.App. 3 Cir.1985).

EXPERT WITNESS FEES
The Department contends that the court erred in taxing as costs the expert witness fees of Dr. Arthur Allen and CPA Eddie G. Johnson. The Department also argues that expert witness fees awarded the landowners' expert real estate appraisers, Barry Guillet and Randy LaCaze, were unreasonably high.
Determination of the amount of award for expert witnesses rests largely within the discretion of the trial judge. State, Department of Transportation & Development v. Van Willet, supra. In determining whether the fee allowed an appraiser and taxed as costs is reasonable, consideration must be given to the question of whether the preparatory work done by the appraiser was reasonably necessary, whether it actually tended to show the value of the property taken or severance damages, and whether the conclusions he reached based on that preparatory work were of some usefulness in determining the award made. State, Department of Transportation & Development v. Van Willet, supra. Consideration must also be given to the value of the property being taken and the amount of severance damages sustained by the landowner. State, Department of Highways v. Gordy, 322 So.2d 418 (La.App. 3 Cir.1975), writ refused, 326 So.2d 370 (La.1976). In the instant case, the value of the property taken and the amount of severance damages are considerable.
The trial court fixed the expert witness fee of Dr. Allen at $810.00. In his written reasons for judgment, the trial court wrote that, although Dr. Allen's testimony overstated the value of the landowners' orchard, Dr. Allen's testimony helped the court to understand "the overall picture of pecan production and the potential of this particular orchard". We think that Dr. Allen's fee, as fixed by the court, was reasonable. Although it appears that the court did not use Mr. Johnson's testimony in determining the amount of its award, it, nevertheless, awarded an expert witness fee of $350.00 for his services. Even if the trial court does not rely on an expert witness's opinion in awarding compensation in an expropriation case, the court may still award a fee. See State, Department of Highways v. Gordy, supra. The modest fee awarded to Mr. Johnson was not unreasonable. The court awarded $2,962.50 to Barry Guillet and $2,663.30 to Randy LaCaze. The record shows that Mr. Guillet spent 48 hours in preparation for his testimony, and that Mr. LaCaze spent 38.4 hours. Both men spent at least one and one-half days in court. We feel that the fees as fixed by the trial court were reasonable.
In its brief, the Department contended that the trial court had erroneously stated in its written reasons for judgment that no evidence as to the value of the temporary servitude taken by the State was presented at trial. While this may be true, the Department *1270 has no basis to complain since the trial judge did not award anything in its judgment to compensate the landowners for this taking.

DECREE
For the foregoing reasons, the judgment of the trial court is affirmed in part, reversed in part, and modified in part as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of Taine E. Henry, Joseph M. Henry, Jr., and Juanita Barberousse Henry, and against the State of Louisiana, Through the Department of Transportation & Development, in and for the full sum of $96,733.18, together with legal interest thereon from August 3, 1982, which is computed as follows:

(1) Compensation for property taken
in full ownership...................... $107,393.77
(2) Compensation for permanent
servitude ............................. $978.99
(3) Compensation for Parcel "X" ....... $6,984.18
(4) Severance damages................... $47,199.24
Less the sum previously deposited by
the State in this matter ............ $65,823.00

IT IS FURTHER ORDERED, ADJUDGED, AND DECREED that the defendants are awarded attorney's fees in the amount of $12,500.00.
In all other respects, the judgment of the trial court is affirmed.
Costs of this appeal are assessed against plaintiff-appellant, State of Louisiana, Department of Transportation & Development.
AFFIRMED IN PART, REVERSED IN PART, AND MODIFIED IN PART.
*1271 
NOTES
[1] An aerial photograph of the tract is attached to this opinion as an appendix.
[2] There was some dispute over the size of this tract, the State's expert claiming that it contained less acreage. The trial court concluded that it contained 2.41 acres as testified to by defendants' experts, and we accept this factual finding of the court.
[3] The trial court granted the landowners $47,225.90 for this element of severance damages. In doing so, it is clear that it made an arithmetic error, and we will revise the award accordingly. See LSA-C.C.P. Art. 2164; Woods v. Ratliff, 407 So.2d 1375 (La.App. 3 Cir.1981).