558 So.2d 689 (1990)
ANR PIPELINE COMPANY
v.
SUCCESSION OF Fairfax Foster BAILEY, etc.
No. 89 CA 0091.
Court of Appeal of Louisiana, First Circuit.
February 21, 1990.
George Wear, Jr., C.A. Martin, III, Shotwell, Brown & Sperry, Monroe, for plaintiff, appellant.
John E. Coleman, Jr., Aycock, Horne & Coleman, Franklin, for Succ. of Fairfax Foster Bailey, James J. Bailey, III, Executor et al defendants.
Victor A. Sachse, III, Frank S. Craig, III, Baton Rouge, for defendants.
Before COVINGTON, WATKINS and SHORTESS, JJ.
SHORTESS, Judge.
ANR Pipeline Company (plaintiff) in this expropriation case, appeals from a judgment in favor of the Succession of Fairfax Foster Bailey, James J. Bailey III, executor, and the Succession of Willie Palfrey Foster, James J. Bailey III, co-executor (defendants), granting defendants compensation pursuant to LSA-R.S. 19:1, et seq. in the amount of $15,000.00 for a permanent right-of-way and easement located in St. Mary Parish, Louisiana. Plaintiff argues that the trial court erred in evaluating the site sought to be expropriated based on the testimony of defendants' appraiser, Craig Thomson, that the highest and best use of the land was light industrial. It assigns as error the trial court's failure to apply LSA-R.S. 19:9 and applicable jurisprudence; its admission of evidence concerning transactions involving other pipeline rights-of-way; and the trial court's rejection of the testimony of plaintiff's appraisers.
The property in question comprises a total of 850 arpents; the site to be taken is 60 feet by 100 feet. Defendants have designated about 150 acres of the entire parent tract as "Wilfair Transmission Park." The property to be expropriated lies directly adjacent to a pre-existing ANR transmission facility. Numerous petroleum-related transmission structures are located in the vicinity of the subject site, which is, in turn, surrounded by sugar cane acreage. The "Wilfair Transmission Park" is not zoned officially as such, but is designated in property descriptions by that name. It developed out of a lease defendants entered *690 into with Exxon for a gas processing plant located very near the subject site. Since the Exxon lease, nine or ten separate facilities have developed near it and now constitute the "Wilfair Transmission Park." More sites are available for lease and defendants actively seek more development for the park. The land fronts on to State Highway 317 and is only one mile to the north of U.S. Highway 90.
At trial of this expropriation case, the right of plaintiff to take the property was not contested. The only issue was the amount of just compensation due defendants.
Plaintiff called two appraisers as expert witnesses. Gene Cope testified that the land could be most effectively used for agricultural purposes, with some limited future potential for development. He acknowledged the extensive road frontage, but felt any light industrial development would occur only in the future. He used 15 different comparable transactions involving purely agricultural land in St. Mary and Iberia Parishes, arriving at a base value of $2,500.00 per acre for purely agricultural land with potential future development. He estimated the value of the servitude at 95% of full fee simple market value, and estimated that the residual rights and surface over the servitude for the pipeline were 20% of the land value, or $500.00 per acre.[1] Therefore, multiplying the acreage for the encumbered area at $500.00 per acre times 95%, and multiplying the acreage for the unencumbered area at $2,500.00 per acre times 95%, he arrived at the figure of $248.00.
Sam Kennedy also testified as an expert appraiser for plaintiff. He found the highest and best use of the property to be as a rural homesite with a depth of 200 feet. He based his figures on the assumption that because of the diminishment of value of the subject site due to prior pipeline servitudes, the price of the land would be so low as to induce a prospective rural homesite buyer to buy the property even though it lay adjacent to a pipeline. His comparable transactions covered a range from $4,000.00 to $6,000.00 per acre for this type property. Thus, he used $6,000.00 per acre as his base value, and computed that the residual value of the servitude was 40%. His calculations resulted in a figure of $529.00 as the total value of the subject tract.
Defendants' expert appraiser, Craig Thomson, came to a totally different conclusion about the property's highest and best use. Thomson testified that, after viewing surrounding properties in areas developed in the vicinity of the subject site, he concluded that the highest and best use of the property would be light industrial in nature. He felt that the surrounding development and the nature of the site itself supported his conclusions. Thomson's comparable transactions were comprised of leases of servitudes in the immediate vicinity of the subject site. He used five comparables, one of which was a servitude for a valve site leased to a private corporation by a landowner; the rest were leases between expropriating entities and landowners. Two involved leases by defendants to Texas Gas and to Transco in the Wilfair Transmission Park itself. Because his comparable transactions were leases, Thomson used the direct capitalization method to obtain the price paid per square foot. He estimated a 10% rate of return and arrived at a range of $1.90 to $10.00 per square foot. After adjustment, he arrived at $2.50 per square foot for the subject property, which came to a total of $15,000.00.
Plaintiff's main complaint about the judgment below is that it ignored LSA-R.S. 19:9's standard for measuring the amount of compensation due to a landowner from an expropriating company. LSA-R.S. 19:9 provides as follows:
A. In estimating the value of the property to be expropriated, the basis of assessment shall be the value which the property possessed before the contemplated improvement was proposed, *691 without deducting therefrom any amount for the benefit derived by the owner from the contemplated improvement or work.
Plaintiff argues that by relying on Thomson's testimony that the highest and best use for the servitude was light industrial, the trial court in effect evaluated the property after the contemplated improvement was proposed. It cites as authority for the proposition that pipeline rights-of-way are not valid comparable sales in a right-of-way expropriation Louisiana Intrastate Gas Corporation v. Edwards, 343 So.2d 1166 (La.App. 3d Cir.), writ denied, 345 So.2d 904 (La.1977), as well as other Third Circuit cases which follow the general rule that where other comparable sales are available to show the fair market value of land expropriated, comparable sales of similar servitudes to expropriating authorities are not controlling. Gulf States Utilities Co. v. Norman, 183 So.2d 421 (La.App. 3d Cir.), writ denied, 185 So.2d 529 (La.1966). Edwards distinguished Norman because in Edwards ample comparable sales were available to determine fair market value without considering pipeline sales.
In this case, defendants' expert witness did not rely solely on comparable transactions between expropriating authorities and landowners: both pipeline and non-pipeline transactions were considered by the trial court in finding that the highest and best use of the property was light industrial. Although it is true, as plaintiff argues, that transactions between expropriating authorities and landowners may not be the best evidence of fair market value because they are not representative of an open market, nonetheless such transactions may be considered as evidence. Norman, 183 So.2d at 428; Louisiana Power & Light v. Mobley, 482 So.2d 706 (La.App. 1st Cir.), writ denied, 485 So.2d 62 (1986). Furthermore, there was sufficient evidence for the trial court to conclude that the highest and best use of the property was light industrial. Property in the immediate area was already being used for pipeline sites; photographs of the property indicate a plethora of petrochemical facilities. Southwestern Electric Power Company v. Scurlock, 485 So.2d 72 (La.App. 2d Cir. 1986).
Once the trial court made the factual determination that the highest and best use of the property was light industrial, it had ample reason for rejecting the opinion of plaintiff's appraisers as to the value of the land. State, Department of Transportation & Development v. Henry, 468 So.2d 1262 (La.App. 3d Cir.1985). Plaintiff presented no evidence as to the value of the land based on light industrial usage; both its experts valued the land's highest and best use as agricultural or residential.
For the reasons stated, we find that the trial court was not clearly wrong in (1) finding that the highest and best use of the property was for light industrial development, and (2) accepting defendants' appraisers' valuation of $15,000.00, based on comparable transactions of similarly situated properties. All costs of the appeal are taxed to plaintiff.
AFFIRMED.
NOTES
[1] The parent tract measures 850 arpents, or approximately 650 acres. The subject tract is 60 feet by 100 feet, or .138 acres. Cope testified that of the .138 acres, .0413 acres were encumbered and .0964 acres were unencumbered.