731 So.2d 508 (1999)
BOARD OF COMMISSIONERS OF the TENSAS BASIN LEVEE DISTRICT, Plaintiff-Appellant,
v.
Larry W. CRAWFORD and Marjorie Crawford, Defendants-Appellees.
Nos. 98-1605, 98-1606.
Court of Appeal of Louisiana, Third Circuit.
April 21, 1999.
*511 Ronald Joseph Bertrand, Theo J. Coenen, III, Rayville, for Board of Com'rs of the Tensas Basin Levee Dist.
Norman Magee, Ferriday, for Larry W. Crawford and Marjorie Crawford.
BEFORE: COOKS, DECUIR, and AMY, Judges.
COOKS, Judge.
This appeal arises as the result of the Tensas Levee District's (District) expropriation of property owned by Larry W. Crawford and Marjorie Crawford (Crawfords). The District appeals the amount of compensation awarded the Crawfords for their loss. The court also awarded the Crawfords attorney's fees, expert witness fees, and legal interest. For reasons which follow, we affirm the judgment of the trial court.[1]

*512 BACKGROUND FACTS AND PROCEDURAL HISTORY
In conjunction with the Sicily Island Levee construction project, the District expropriated 77.97 acres of the Crawfords' 640 acre farm. The tract, commonly referred to as the Lakeview or Fool River Plantation, has been farmed by the Crawfords for the past thirty years. This property, lying in Catahoula Parish with a very small portion located in Franklin Parish, is bounded on the north by the Fool River and on the east by the Tensas River. The District deposited $36,260.00, as payment for the expropriated property, in the registry of the court basing its value calculation on the property's current use as farmland. The Crawfords did not contest the District's right to expropriate this property; rather, they maintained that the amount tendered was inadequate. In particular, they asserted below the amount of just compensation due them substantially exceeded the deposited amount because, among other things, eighty-one and three-tenths (81.3) acres of their property fronts the Fool and Tensas Rivers; and as such, this acreage should have been valued as river front lot sites.
The trial court agreed with the Crawfords in part. The court assigned a higher value to that portion of the property bordering the Fools and Tensas Rivers. However, instead of 81.3 acres, he found only seventy (70) acres of the Crawfords' property qualified for the higher valuation. The value of the remaining acreage, farmland and area that includes waste, drains, and roads, was determined using a combination of the values set by the District's appraisers. The trial court also found severance damages were appropriate because of the decline in the market value of the Crawfords' homesite tract that results from the taking and/or construction of the proposed improvement. The Crawfords were also awarded both attorney's fees, expert witness fees and legal interest on all. The District now appeals this ruling.

ASSIGNMENTS OF ERROR
The District originally assigned four errors for our review. Prior to oral argument, however, the parties executed a stipulation agreeing the trial judge committed mathematical errors which they jointly agreed should be corrected as proposed therein and further narrowing the real issues for our review to three:
1. The assignment of a highest and best use to 70 acres of the property as riverfront camp lots was clearly erroneous.
2. The trial judge was clearly erroneous in finding severance damage to the homesites on the property.
3. Should the award of $7,000.00 for Appellee's expert fee be reduced?
The Crawfords answered the appeal seeking additional attorney's fees for work necessitated by the appeal.

LAW AND ANALYSIS

Highest and Best Use
The "highest and best use" doctrine encompasses the definition of "fair market value." State, Dept. of Transp. & Development v. Schwegmann Westside Expressway, Inc., 95-1261 (La.3/1/96); 669 So.2d 1172, 1175. In expropriation cases, fair market value is the price a buyer is willing to pay after considering all of the uses that the property may be put to where such uses are not speculative, remote, or contrary to law. Id., citing West Jefferson Levee Dist. v. Coast Quality, 640 So.2d 1258 (La.1994). "The current use of the property is presumed to be the highest and best use, and the burden of overcoming that presumption by proving the existence of a different highest and best use based on a potential future use is on the landowner." Id. at 1275. To prevail the landowner must show that it is "reasonably *513 probable" that the property could, absent the expropriation, be put to the highest and best use in the not too distant future. West Jefferson, 640 So.2d 1258. "Such use must have an effect on the price a buyer is willing to pay." Id. at 1273.
The highest and best use can only be determined after a consideration of the surrounding factual circumstances. The determination of the highest and best use, the amount that will compensate the owner of a property right, to the full extent of his right, must be made on the basis of the facts of each case and in accordance with the uniqueness of the thing taken. State, Dept. of Transp. & Development v. Hammons, 550 So.2d 767 (La.App. 2 Cir.1989). The West Jefferson Court outlined a list of considerations which may be utilized by the trial court in its determination of the highest and best use. The Court stated:
[i]n seeking to determine a highest and best use of property which would have an effect on the market value of the property at the time of the expropriation in that it would be considered by a willing purchaser and is not remote or speculative, several factors may be considered, including, but not limited to: market demand, proximity to areas already developed in a manner compatible with the intended use, economic development in the area, specific plans of businesses and individuals, including action already taken to develop the land for that use, scarcity of land available for that use, negotiations with buyers interested in the property taken for a particular use, absence of offers to buy the property made by buyers who would put it to the use urged, and the use to which the property was being put at the time of the taking. (Citations omitted).
West Jefferson, 640 So.2d at 1274. These factors are merely suggested considerations; they are not meant to be all-inclusive. Accordingly, in its application of the highest and best use doctrine, the trial court is only obligated to consider the factor(s) it believes important.
The trial court is granted a great deal of discretion in determining the value of land in expropriation cases. The fixing of value of the property by the trial court will not be disturbed unless manifestly erroneous. State, Dept. of Transp. & Development v. Estate of Davis, 572 So.2d 39 (La.1990). Opinions as to the value expressed by experts are not binding on the trier of fact since they are ordinarily not conclusive and generally regarded as advisory in character. West Jefferson, 640 So.2d 1258. "The weight to be given to expert testimony is determined by the trier of fact based on the professional qualifications and experience of the expert, the facts and studies upon which his opinion is based, his familiarity with the locality of the property involved, and the possible bias of the witness in favor of the side for whom he testifies." Id. at 1277. The trial judge is not required to accept or reject the testimony of any particular witness, but "may give whatever weight he considers appropriate to the testimony of any and all witness in making his factual determination of the value of the property taken." Id.
The trial court found, even though for the past thirty years the 70 acres has been used as farmland, the highest and best use of this "riverfront area is for subdivision and sale as camp type lots." The decisive consideration in the court's analysis was the suitability of the property for the proposed potential use. In Catahoula Parish there is a lack of riverfront subdivisions along the Tensas River. The only attempt at constructing a subdivision in this area took place in 1972. Although all the lots in the subdivision are sold, it has not been completely developed. The absence of other riverfront developments in the area may be attributable to the surrounding geography. The region is very rural and bereft of sufficient road access to the river banks. William Fielding "Colt" James, an appraiser for the District, testified:

*514 The whole area is in farmland. There's scattered rural residential lots and sites around, but as a whole, this whole area of Catahoula Parish is relatively rural and, you know, there's nothing there to indicateat least at first glancethat the property would be utilized for anything other than a farm.
The Crawfords' appraiser, James McNew, who lived in the surrounding area for forty years, corroborates James' characterization testifying: "[t]here's a lot of landowners and there's very few roads that get all the way back to the Tensas River." The Crawfords' property is atypical of this portion of Catahoula Parish which borders the Tensas River. The distinguishing feature is the existence of a means of access to the river. Specifically, State highway 921, with all but approximately 1.5 miles being improved asphalt, provides direct approach to the Crawfords' property and the river. In this respect, the Crawfords' tract, although situated in Catahoula Parish, is more akin to that portion of Franklin Parish which borders the Tensas River. Just four miles from the Crawfords' property are two riverfront campsites in Franklin Parish. McNew testified, both of these campsites are flourishing; one has, within the last four years, sold out all of its lots along the Tensas River. The development of these campsites is a direct result of State highway 562, which provides access to the river banks. By comparison, the Crawfords' tract is similarly suitable for riverfront campsite development because of its road access to the river. Moreover, according to McNew, the Crawfords' property, because it offers superior access to the river, is better suited for this purpose than the properties in Franklin Parish. In its Reasons for Judgment, the trial court pointed out "that State highway 562 is not as well improved as highway 921 and is a longer distance from the main state highway than the Crawfords' property."
In addition to the tract's suitability for riverfront campsites, the trial court also considered Larry Crawford's testimony regarding the offers he received, prior to the taking, to purchase the land. He testified he received regular recurring offers to buy riverfront property for recreational use, but declined the offers because he did not want to liquidate his asset. The "once a month inquiries stopped only after the levee was erected." These offers evidence an existing demand for the tract as riverfront campsites. Further, the tract's location also indicates such development would in all likelihood have thrived. The Crawfords' tract is within twenty-five miles of several densely populated regions such as Vidalia, Winnsboro, Jonesville, and Ferriday. The tract is also within reasonable proximity to the metropolitan areas of Monroe/West Monroe, Alexandria/Pineville and Natchez, Mississippi. The convenient location provides a substantial market from which to draw buyers of riverfront property.
The above considerations support the landowner's contention and the trial court's holding that the highest and best use of 70 acres of the subject tract is as riverfront campsite property. This court need not address the value ascribed to this acreage by the trial court, as both sides have agreed by stipulation the judge's valuation is appropriate. We, therefore will not disturb this portion of the trial court's judgment.

Severance Damages
Severance damage is any depreciation in market value of the remainder of a landowner's property caused by the taking. Such damages are recoverable and are ordinarily calculated as the difference between the value of the remaining property and before and after the taking. State, Dept. of Hwys. v. Denham Springs Dev. Co., Inc., 307 So.2d 304 (La.1975). "Severance damages must be shown to a reasonable certainty and must not be too remote or speculative for the mere possibility of severance damages is an insufficient basis for an award." State, Dept. of Transp. & Development v. Boagni, 509 *515 So.2d 471, 474 (La.App. 3 Cir.1987), citing City of Alexandria v. Jones, 236 La. 612, 108 So.2d 528 (1959). The trial court's factual findings as to severance damages in an expropriation proceeding and the weight given to the testimony of expert witnesses as the basis of this factual conclusion will not be disturbed absent a showing of manifest error. Id.
Three dwellings, a main house and two brick veneer residences, occupy approximately 6.4 acres of the Crawfords' property. The two brick houses occupy half of this acreage (3.2 acres). These buildings, which serve as homes for farm laborers, are located just south of the main home overlooking the Tensas River. It was adduced at trial that 2.2 acres of the "homesite" will be burdened by the levee servitude. The main dwelling is not affected by the servitude. However, the servitude will reduce the front yard space available to the residents of the two smaller homes. McNew testified, without opposition, the levee servitude extends to about eight feet of the front door of one of the brick houses and within twenty-six feet the other.
The District argues, because the homes were constructed to serve as residences for farm laborers and not for sale in the market, the Crawfords are not entitled to severance damages. Essentially, the District intimates in determining whether severance damages are due, we must take into account the "status" of the brick homes' residents. It appears the District believes the present occupants are not entitled to enjoy nature's splendor, nor should they be affected by its loss because they are farmhands. Trusting that we have correctly characterized the District's position, we find it is totally without legal merit. The pertinent considerations are the state of the "homesite" tract prior to and following the taking and whether the value of the remainder of the property has diminished as a result. "[T]here must be a change for the worst in the pecuniary position of the property owners as a result of the taking." State, Dept. of Transp. & Development v. Unverzagt, 590 So.2d 680, 683 (La.App. 3 Cir.1991). Accordingly, it is immaterial who the occupants are, if the "homesite" tract has lost some of its utility as a result of the taking, severance damages are due.
The trial court found, as a result of the reduction of the yard around the tenant homes, the District's taking caused the "homesite" tract to diminish in value. Central to the trial court's conclusion was the loss of available greenery to the residents of the two brick homes. As stated by the trial court in its Reasons for Judgment:
The levee servitude cannot be planted with crops, but more pertinent to the homesites, no trees may be planted on the servitude.... [T]hese homes may not have the benefit of shade or even ornamental trees in their yard.
The loss of foliage justifies an award of severance damages. This Court has found where the loss of aesthetic considerations serves to reduce the market value of the remainder of the property, they certainly may be considered in determining the amount of severance damages awarded. City of Lafayette v. Dore, 460 So.2d 755, citing Central Louisiana Elec. Co., Inc. v. Davis, 291 So.2d 489 (La.App. 3 Cir.1974). Further, in State Dept. of Highways v. Moresi, 189 So.2d 292 (La.App. 3 Cir. 1966), we specifically held the loss of trees on expropriated property, which added to the market value of the landowner's remaining tract, should be included in the trial judge's assessment of severance damages.
For their loss, the trial court awarded the Crawfords $11,950.00 in severance damages, based on the estimated difference between the value of the "homesite" before and after the taking. Because there were no comparable sales of developed "homesites" in the market, McNew calculated the before value utilizing the cost approach. Absent comparable sales, "reproduction costs less depreciation" is *516 the most appropriate method of estimating the value of the homesite before the taking. Moresi, 189 So.2d at 295, citing, State, Dept. of Highways v. O'Neal, 150 So.2d 608 (La.App. 3 Cir.1963). In his appraisal report McNew explained:
Cost Approach: Replacement cost information was obtained from Marshall & Swift's, Residential Cost Handbook along with the typical depreciation found in the national market for this age and class of dwelling. The typical depreciation found in this national table does not include economic obsolescence found in the local market. I have used an additional 30% to reflect the local market conditions. This is based on past abstraction of depreciation rates in this market. The total depreciation rate from all causes is projected at 39% cost of the new. The value of the two home sites, which have frontage on Tensas River of 300 feet for the owner's dwelling and about 300 feet for the two tenant houses, is based on river front lot sales. The value of the owner's 3.2 acre home site is $15,000 or $50 per front foot plus $3,000 in landscaping and site preparation. The value of the 3.2 acre tenant home site is $2,000 plus landscaping of $1,500. This home site is across the road from the river frontage, and its value is based on a similar sale of this type of frontage.
After adding the landscaping and the land value, and the depreciated value of the homes, McNew determined the value of the main dwelling home was $80,400.00 and together the two brick homes were worth $65,750.00. McNew employed the same approach in determining the value of the "homesite" after the taking. Since the levee servitude will not affect the main dwelling, McNew finds no change in its value. The value of the two smaller homes, however, drops to $53,800.00. The resulting difference, thus, is $11,950.00. Because the District rejected the possibility of severance damages, it offers no estimate of the decline in market value of the Crawfords'"homesite" tract.
If an expert is qualified to testify to the valuation of the property, the weight of that expert's testimony depends on the fact finder's assessment of his logic, consistency, reasonableness, and credibility. State, Dept. of Transp. & Development v. Regard, 567 So.2d 1174 (La.App. 3 Cir.1990). It is distinctly within the province of the trial court to assess the credibility of expert witnesses and the weight to assign to their testimony. Dore, 460 So.2d 755. Further, when an expert's well reasoned testimony supports an award of damages and is accepted by the trier of fact, the property owner should prevail. Naquin v. State, Dept. of Transp. & Development, 604 So.2d 62 (La.App. 1 Cir.), writ denied, 608 So.2d 169 (La.1992). Accordingly, after reviewing the testimony of the experts and other evidence, we find no abuse of discretion in the trial court's award of $11,950.00 in severance damages.

Expert Witness Fee
In expropriation proceedings, the condemning authority is taxed with the reasonable costs of the testifying expert witness retained by the landowner to assist him in obtaining his just compensation. State, Dept. of Transp. & Development v. Jacob, 491 So.2d 138 (La.App. 3 Cir.), writ denied, 496 So.2d 331 (La.1986). The fixing of expert witness fees is largely within the discretion of the trial court, and the trial court's fixing thereof will not be disturbed in the absence of abuse of discretion. In fixing expert witness fees, each case must turn on its peculiar facts and circumstances. "However, the jurisprudence has provided us with certain factors to consider in fixing expert witness fees. Some of the pertinent factors are the amount of time consumed by the experts in compiling their reports; the amount charged to the landowner; the amount of time spent in preparing for trial; the amount of time actually spent in court; the expertise of the expert; the difficulty of the appraisal; the amount involved in the *517 award; and, the degree to which the expert's opinion aided the court in its decision." Id., citing State, Dept. of Highways v. Romano, 343 So.2d 222 (La.App. 1 Cir. 1977). Consideration must also be given to the value of the property being taken and the amount of severance damages sustained by the landowner. State, Dept. of Transp. & Development v. Henry, 468 So.2d 1262 (La.App. 3 Cir.1985).
To determine the value of the condemned property, McNew had to physically inspect the subject tract and the surrounding region. After completing his survey, McNew meticulously prepared an appraisal report, and several topographical maps for use at trial. In addition to his pretrial work, McNew testified in court where regarding the highest and best use and outlined the various methods employed in estimating the value of the Crawfords' property. This testimony was a substantial aid in the trial court's determination of compensation and severance damages. McNew submitted a bill of $8,904.44 to the Crawfords for his services. The trial court awarded expert witness fees in the amount of $7,000.00. In light of the amount of time spent by McNew, as well as the utility and thoroughness of his work, we find no error in the amount of expert fees awarded by the trial court.

Additional Attorney's Fees
The Crawfords answered the District's petition for appeal seeking additional attorney's fees for work done on appeal. An appellee's request for additional attorney's fees will be granted if the appellant appeals but obtains no relief, the appeal requires more work from the appellee, and the appellee requests an increase in attorney's fees in accordance with proper appellate procedure. O'Neill v. Thibodeaux, 97-1065 (La.App. 3 Cir. 3/6/98); 709 So.2d 962; Riser v. Acadiana Limousine Serv., Inc., 96-1687 (La.App. 3 Cir. 4/30/97); 693 So.2d 330, writ denied, 97-1420 (La.9/19/97); 701 So.2d 173. In this case, all of the requirements for awarding additional attorney's fees have been met. Consequently, we will award an additional amount of $3,000.00 for the work necessitated by the appeal.

DECREE
For the foregoing reasons the judgment of the trial court is affirmed in part, amended in part, and modified in part as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment in favor of Defendants, Larry W. Crawford and Marjorie Crawford and against Plaintiff, Board of Commissioners of the Tensas Basin Levee District, in the sum of $89,005.00 less credit for $36,260.00 previously paid to Defendants, for a net sum of $52,745.00 plus legal interest from November 17, 1994, until paid;
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that judgment be and it is hereby entered in favor of Defendants, Larry W. Crawford and Marjorie Crawford, and against Plaintiff, the Board of Commissioners of the Tensas Basin Levee District, awarding Defendants, Larry W. Crawford and Marjorie Crawford, attorney fees for the services of their attorney, Norman Magee in the amount of $13,186.00, and for the services of James C. McNew for their expert witness fees in the amount of $7,000.00, plus legal interest on all of the foregoing amounts from August 5, 1998, until paid.
In all other respects, the judgment of the trial court is affirmed. Further, we award the Crawfords' additional attorney's fees in the amount of $3,000.00 for services rendered by their attorney on appeal.
Costs of this appeal are assessed against plaintiff-appellant, Board of Commissioners of the Tensas Levee Basin District.
AFFIRMED IN PART, AMENDED IN PART, AND MODIFIED IN PART.
NOTES
[1] The trial court awarded the Crawfords $133,250.00 in total compensation. This amount, however, due to a mathematical error, is excessive. Consequently, the amount of attorney's fees awarded, which is 25% of the difference between the amount of compensation due and the amount of compensation deposited into the registry, is also erroneous. The parties have stipulated and agreed to the correct amount of compensation, and we will revise the award accordingly.