669 So.2d 1172 (1996)
STATE of Louisiana, DEPARTMENT OF TRANSPORTATION AND DEVELOPMENT
v.
SCHWEGMANN WESTSIDE EXPRESSWAY, INC.
No. 95-C-1261.
Supreme Court of Louisiana.
March 1, 1996.
Rehearing Granted in Part With Order; Otherwise Denied April 26, 1996.
*1173 Salvatore Panzeca, Metairie, Robert L. Ledoux, Baton Rouge, Gregory G. D'Angelo, Metairie, Frederick J. Fuselier, Baton Rouge, Panzeca & D'Angelo, Metairie, for Applicant.
David L. Stone, Stephanie D. Shuler, New Orleans, for Respondent.
JOHNSON, Justice.[1]
We granted certiorari in this expropriation matter to determine whether the jury's severance damage award of $4,850,000.00 was an abuse of discretion. In addition to severance damages, the jury awarded Schwegmann Westside Expressway Inc. (hereafter Schwegmann) $150,000.00 for the loss of land and improvements actually taken. The trial court awarded statutory attorney's fees of 10%, expert witness fees plus exhibit and court costs. (Of the total monetary award rendered below, this court is only deciding the amount of severance damages). On appeal, the fourth circuit decided that the jury's award was not an abuse of discretion and found that the severance damage award was within the range established by experts testifying on behalf of both parties. State of Louisiana, Department of Transportation and Development v. Schwegmann Westside Expressway, Inc., 651 So.2d 1359 (La.App. 4 Cir.1995). Since we believe the jury's award was excessive, we set aside the amount for severance damages and award an amount that is consistent with the evidence found herein.

FACTS
The State, through the Department of Transportation and Development (hereafter DOTD), expropriated a portion of property owned by Schwegmann located on Chef Menteur Highway in New Orleans, pursuant to La.R.S. 48:441 et seq. As its initial estimation of compensation, DOTD deposited $133,000.00 into the registry of court. In its original answer, Schwegmann demanded $200,000.00 as compensation for the property taken, and $500,000.00 in severance damages. Subsequently, an amended answer was filed and Schwegmann increased its reconventional demand to $1,050,000.00, of which $850,000.00 was for severance damages.
The property at issue, a 40 foot wide (approximate 13,272 sq. ft.) strip of land which fronts Chef Menteur Highway was used for parking and is one part of a two part parcel separated by Old Gentilly Road. The first part which contained the section which was taken, lies between Chef Menteur Highway and Old Gentilly Road and serves as the parking facility. The other part lies beyond Old Gentilly Road and contains a two-story, 255,000 square foot building. This part housed a Schwegmann Supermarket, other retail merchants and the Schwegmann corporate headquarters. The property is owned entirely by Schwegmann Westside Expressway, Inc. which leases the entire parcel to *1174 Schwegmann Giant Supermarket.[2] As a result of the taking, the Schwegmann property no longer has direct access to and from Chef Menteur Highway.
At trial, DOTD presented expert testimony which described the expropriated land both before and after the taking as "special purpose" property, specifically a Schwegmann Supermarket. Testifying on behalf of DOTD were Clifford McCormick, Irvington Eppling and Peter J. Talluto, all real estate appraisers. McCormick testified that the property in question had a before taking value of $8,984,000.00 and an after taking value of $8,881,530. Eppling determined that the before taking value was $8,177,328 and the after taking value was $7,883,556. Talluto testified that the before taking value was $8,148,786 and the after taking value was $7,871,036.
Conversely, Schwegmann's appraisers based their estimates on the basis of an assumed "highest and best use" of the property as a discount retail outlet or warehouse, not a Schwegmann Supermarket. Frederick M. Guice and Jean Felts were accepted as experts in the field of real estate appraisals. Guice determined that the before taking value was $4,050,000.00, and the after taking value was $3,200,000.00 while Felts stated that the before taking value was $3,660,000.00 and the after taking value was $2,765,000.00.
At the conclusion of trial, the jury awarded Schwegmann $150,000.00 for the 40 foot strip that was expropriated. Additionally, it awarded $4,850,000.00 in severance damages or approximately five times the amount of damages sought by Schwegmann in pleadings filed in this matter.
In a 2-1 decision with J. Landrieu dissenting, the fourth circuit affirmed the award. It found that the jury's award of $4,850,000.00 in severance damages was reasonable because it was within the "range" established by the experts by taking DOTD's highest before taking value of $8,984,000.00 and Schwegmann's lowest after taking value of $2,765,000.00, yielding a difference of $6,219,000.00. It reasoned that the jury was not bound to accept in full any expert's testimony, but instead could accept parts of the testimony of two or more experts and reject other parts of their testimony.
In his dissenting opinion, J. Landrieu disagreed with the majority's decision to affirm the jury's award of $4,850,000.00 in severance damages. He concluded that the jury could have used either DOTD's before and after value as if the property were a Schwegmann Supermarket, or defendants before and after value as if it were not, however, it was "clearly illogical" for the jury "to mix plaintiff's appraisers' value (used as a giant supermarket) and defendants appraisers' value (not used as a giant supermarket) and conclude that the difference was within the range of damages". Schwegmann Westside Expressway, Inc., supra at 1369.
In its application for certiorari, DOTD cites three assignments of error: (1) That the appellate court erred in affirming the jury's verdict by reasoning that the jury could have relied upon more than one expert's opinion as to the market values of the subject property both before and after the taking, even though the opinions of the respective party's experts were based upon different facts, assumptions and methods; (2) That the appellate court erred in awarding the verdict, a) by reasoning that the highest and best use of the property changed as a result of the taking; b) by holding that the defendant proved such a change in the highest and best use by competent evidence; and (3) That the appellate court erred in affirming the jury's verdict that the defendant suffered severance damages when the defendant failed to introduce any competent evidence to show a loss of the property value to the remaining parcel after the taking.
The evidence in this matter proves that the taking of a portion of the Schwegmann property certainly damaged the remaining property because direct access and some visibility were lost as a result. Schwegmann presented evidence that the taking converted what *1175 had been property fronting an unrestricted 2-way, 6-lane major highway carrying 30,000 vehicles daily, to one with access solely to a 1-way service road carrying 1200 cars per day. Moreover, the service road was only accessible from a point 500 feet west of the property where the Schwegmann store was not visible. Further evidence of damage came from testimony given by the expert appraisers, and even two of DOTD's appraisers stated that the value of the remaining parcel diminished as a result of the taking.[3] Based on these findings, the last assignment of error is without merit. The remaining assignments of error will be discussed below.

DISCUSSION
In this expropriation matter, the ultimate issue which must be decided is whether the jury abused its discretion in awarding $4,850,000.00 in severance damages. However, before getting to the monetary award, we must first decide whether the "highest and best" of the property changed as a result of the taking. DOTD argues that the highest and best use of the property remained unchanged, while the experts for Schwegmann testified that because of the taking, the highest and best use of the property is no longer a supermarket.

highest and best use
The "highest and best use" doctrine encompasses the definition of "fair market value". In expropriation cases, fair market value is the price a buyer is willing to pay after considering all of the uses that the property may be put to where such uses are not speculative, remote or contrary to law. West Jefferson Levee Dist. v. Coast Quality., 640 So.2d 1258 (La.1994). Factors which may be considered in determining the highest and best use of property at the time of the expropriation are: market demand, proximity to areas already developed in a compatible manner with the intended use, economic development in the area, specific plans of business and individuals, including action already taken to develop the land for that use, scarcity of the land available for that use, negotiations with buyers interested in the property taken for a particular use, absence of offers to buy the property made by the buyers who put it to the use urged, and the use to which the property was being put at the time of the taking. Id. at 1274.
The current use of property is presumed to be its highest and best use. The landowner bears the burden of overcoming this presumption and it is incumbent upon him to prove the existence of a different highest and best use based on a potential, future use.[4]West Jefferson Levee Dist. further states "a landowner is entitled to compensation based on a potential use of the property, even though the property is not being so used at the time of the taking, provided he can show it is reasonably probable that the property could be put to this use in the not too distant future, absent the expropriation and project for which the land was expropriated, and provided such a use would have an effect on the price a buyer is willing to pay." Id. at 1273. The facts of this case show that the taking took place on or about July 27, 1983, nearly ten (10) years before trial.[5] This proves that the proposed changes referred to by defendant's experts neither took place soon thereafter nor took place at all. To date, the property still operates as a special purpose property, specifically a Schwegmann Supermarket.
Considering the factors cited in West Jefferson Levee District, the fact that this property was constructed with special drains, grease traps, large capacity air-conditioning and a facility for frozen foods, and our jurisprudential rule that the burden of proving the existence of a different highest and best use of the property based on a potential, future use is on the landowner, it is without any doubt that this building was constructed as a special purpose property, i.e., a Schwegmann Supermarket. Based on these findings, the evidence of this case does not indicate *1176 that the highest and best use of the property changed because of the expropriation.

severance damages
Article 1, § 4 of the Louisiana Constitution grants the state the authorization to take an individual's property provided that the taking is conducted for public purposes and with the owner being compensated fairly. In pertinent part it states:
"Property shall not be taken or damaged by the state or its political subdivisions except for public purposes and with just compensation paid to the owner or into court for his benefit. Property shall not be taken or damaged by any private entity authorized by law to expropriate, except for a public and necessary purpose and with just compensation paid to the owner; in such proceedings, whether the purpose is public and necessary shall be a judicial question. In every expropriation, a party has the right to trial by jury to determine compensation, and the owner shall be compensated to the full extent of his loss ..."
This case reveals that the above provisions were adhered to. The property was taken for a public purpose and funds were deposited with the registry of court. DOTD was of the opinion that the amount deposited was enough to compensate the defendant, while Schwegmann strongly opposed the $133,000.00 and sought over $1,000,000.00 as evidenced by the amended answer.
Pursuant to La.R.S. 48:453(B), severance damages are measured on the basis of immediately before and immediately after the taking, and considers the effects of the completion of the project in the manner proposed. In West Jefferson Levee Dist., this court defined severance damages as damages due to the landowner for that portion of his property which was not expropriated on the basis of immediately before and immediately after the expropriation taking into consideration the effects of the completion of the project in the manner proposed or planned.[6] See also State Through Dept. of Highways v. Ross Continental Motor Lodge, Inc., 328 So.2d 883 (La.1976); State Through Dept. of Highways v. Wells, 308 So.2d 774 (La.1975); State Through Dept. of Highways v. Hoyt, 284 So.2d 763; State, Department of Highways v. Hunt, 219 So.2d 602 (La.App. 1 Cir.1968).
We agree with the jury's conclusion that severance damages are due in this case because before the expropriation, Schwegmann's property fronted directly onto Chef Menteur Highway, with easy direct visibility and access. After the expropriation, the property loss visibility due to the construction of a mid-rise bridge directly in front, as well a loss of access, ingress and egress. However, the jury improperly arrived at the amount of the award.
In affirming the jury's verdict, the appellate court opined that a trier of fact may accept and give greater weight to those portions of testimony of each witness which, in its opinion, are more reasonable and logical. See State, Depart. of Highways v. New Orleans Terminal Co., 319 So.2d 568 (La. App.4th Cir.1975). Moreover, a trier of fact does not have to accept in toto the testimony of any one group or group of witnesses. New Orleans Terminal Co., supra at 572. Additionally, the appellate court relied on New Orleans Terminal Co. as well as the case of State, Dept. of Transportation v. Rushing, 514 So.2d 209 (La.App.3rd Cir. 1987) for the proposition that a jury may accept a part of an expert witness appraiser's opinion and reject another part, and accept the parts of two or more appraiser expert witnesses and reject other parts of their testimony. However, the findings of these cases are not totally applicable to the instant matter. Here, the opinions of the experts differed when the value of the property was assessed. In New Orleans Terminal Co., the appraisers for plaintiff testified that the highest and best use of the property in question was to keep it as a railroad. Likewise, defendant's experts testified that the highest and best use of the property was for industrial purposes. In Rushing, experts for both parties valued the expropriated property under the premise that it was commercial. Unlike *1177 New Orleans Terminal Co. and Rushing where there is evidence to suggest that the opposing experts made their assessment of the property using similar assumptions, clearly, the opposing experts of this case made their assessments of the property from two very different viewpoints. DOTD's appraisers assessed the property immediately before and immediately after the taking as a Schwegmann Supermarket, and determined that the property was considered to be "a special purpose property". On the contrary, defendant's appraisers admitted that they did not assess the property as a special purpose property, and that the highest and best use was something other than a Schwegmann Supermarket. Obviously, the experts appraised the expropriated property with very different assumptions and methods, which supports a finding that the jury's verdict was improper. Therefore, the jury was in error when it accepted DOTD's before taking appraisal as a special purpose property such that it remained a Schwegmann Supermarket, compared with Schwegmann's after taking appraisal as a warehouse and/or discount retail outlet.

standard of review
Our rules of manifest error state that before a factfinder's verdict may be reversed, there must be evidence within the record such that a reasonable factual basis does not exist for the verdict, and the record establishes the verdict is manifestly erroneous. Stobart v. State Through Dept. of Trans. and Development, 617 So.2d 880 (La. 1993). In Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), we held that an appellate court should not upset factual findings of a trial court absent manifest error or unless clearly wrong. Although the factfinder is afforded deference, appellate courts and this court nonetheless have a duty to review facts.[7] Upon review, an appellate court may not merely decide if it would have found the facts differently, but rather the trial court's decision should be affirmed when its judgment is not clearly wrong or manifestly erroneous. The appellate court has a constitutional duty to perform, and it has the right to determine whether the trial court's verdict was clearly wrong based on the evidence. Ambrose v. New Orleans Police Amb. Serv., 639 So.2d 216 (La.1994). Here, the evidence suggests the jury's verdict was manifestly erroneous when it arrived at a figure using the methods of both sets of experts, when admittedly, the appraisers did not employ the same facts, assumptions or methods. Therefore, the jury's award of $4,850,000 in severance damages is vacated and set aside.
Finally, a determination as to the proper amount of severance damages must be made. The evidence in this case reveals that the difference between the before taking values and the after taking values under the assumptions expressed by DOTD's experts are $102,407.00, $293,772.00 and $277,750.00. Conversely, the difference between the before value takings and the after taking values under the assumptions expressed by Schwegmann's experts are $850,000.00 and $895,000.00. After carefully reviewing the record, we feel it is more appropriate to rely on the findings of Schwegmann's experts. Therefore, we hold that the severance damage award should be $895,000.00.

DECREE
For the reasons assigned, the jury's award for severance damages is vacated and set aside. We award $895,000.00 in severance damages.
REVERSED AND RENDERED.
KIMBALL, J., dissents and assigns reasons.
LEMMON, J., concurs.
VICTORY, J., concurs in the result.
KIMBALL, Justice, dissenting.
I do not believe the jury committed manifest error in awarding $4,500.000 in severance damages; therefore, I respectfully dissent.
*1178 In an expropriation proceeding, a factfinder's factual determinations as to value of property and entitlement to any other types of damages will not be disturbed on review in the absence of manifest error. West Jefferson Levee District v. Coast Quality, 640 So.2d 1258, 1277 (La.1994). In Stobart v. State Through Department of Transportation and Development, 617 So.2d 880, 882-83 (La.1993), this court stated:
A court of appeal may not set aside a trial court's or a jury's finding of fact in the absence of "manifest error" or unless it is "clearly wrong." this court has announced a two-part test for the reversal of a factfinder's determinations:
1) The appellate court must find from the record that a reasonable factual basis does not exist for the finding of the trial court, and
2) the appellate court must further determine that the record establishes that the finding is clearly wrong (manifestly erroneous).
This test dictates that a reviewing court must do more than simply review the record for some evidence which supports or controverts the trial court's finding. The reviewing court must review the record in its entirety to determine whether the trial court's finding was clearly wrong or manifestly erroneous.
Nevertheless, the issue to be resolved by a reviewing court is not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Even though an appellate court may feel its own evaluations and inferences are more reasonable than the factfinder's, reasonable evaluations of credibility and reasonable inferences of fact should not be disturbed upon review where conflict exists in the testimony.
In an expropriation case, a landowner is entitled to be compensated to the fullest extent of his loss. La. Const. Art. I, Sec. 4. This amount includes not only the value of the land actually taken but also damages to the remaining land which result from the expropriation, an amount known as "severance damages". The burden of proving severance damages is on the landowner, and they "must be shown to a reasonable certainty and must not be too remote or speculative." West Jefferson Levee District v. Coast Quality Construction Corp., 640 So.2d 1258, 1297 (La.1994). The measure of severance damages is the "diminution in the value of the remaining property caused by the taking" which is determined by looking at the fair market value of the property both before and immediately after the expropriation. West Jefferson, Id. "Fair market value" is the "price for property which would be agreed upon between a willing and informed buyer and a willing and informed seller under usual and ordinary circumstances; it shall be the highest price estimated in terms of money which property will bring if exposed for sale on the open market with reasonable time allowed to find a purchaser who is buying with knowledge of all the uses and purposes to which the property is best adapted and for which it can be legally used." Id. at 1271 (quoting La.R.S. 47:2321). Thus, the fair market value is the price a buyer is willing to pay after he has considered all of the uses to which the property may be put, where such uses are not speculative, remote or contrary to the law. Id. In the context of the instant case, our review is confined to a determination of whether there is a reasonable factual basis in the record from which a jury could have determined the fair market value of defendant's non-expropriated property decreased in the amount of $4,500,000.00 because of the effects of the project for which the defendant's other property had been expropriated.
The doctrine of "highest and best use" is inapposite to this case. It applies where a landowner, whose property is expropriated, argues that his property would have had a more profitable use in the future but for the expropriation and therefore, he should be compensated at a value based on the future use and not the use to which the property was being put at the time of the expropriation. Thus, "a landowner is entitled to compensation based on a potential use of the property, even though the property is not being so utilized at the time of the taking, provided he can show it is reasonably probable the property could be put to this use in *1179 the not too distant future." If a landowner can prove it was reasonably probable his property could have been put to this more profitable use in the not too distant future, the factfinder should determine a fair market value of the property based on this higher and better use and utilize it as the before taking value of the property, and then determine the effect the taking had on the value of the property in order to arrive at an amount of severance damages. The doctrine of highest and best use simply does not apply in this case because Schwegmann Westside is not arguing that but for the expropriation, its property would have had a use which was more profitable than the use it had at the time of the expropriation, and therefore it was entitled to compensation based on a the fair market value the property would have if it could be used in a fashion more lucrative than a supermarket. Rather, Schwegmann Westside has set forth an argument that the fair market value of its property has been reduced because a property owner can only hope to profitably rent it as a discount outlet/warehouse, which it asserts is less lucrative than the use of the property as a supermarket. For these reasons, the highest and best use doctrine is irrelevant.
Although highest and best use analysis does not apply in this situation, Schwegmann Westside is nevertheless constitutionally entitled to be compensated to the fullest extent of its loss. As explained earlier, Schwegmann Westside is entitled to severance damages if it can prove the fair market value of its remaining property immediately after the expropriation and the completion of the project for which the property was expropriated is lower than the fair market value the property had immediately prior to the expropriation.
Schwegmann Westside asserts the jury did not manifestly err in awarding severance damages in the amount of $4,500,000.00 because this represents the approximate difference between the value the remaining property had prior to the taking (when a buyer could hope to rent the property as a viable supermarket), and the value the remaining property had after the taking (when a buyer could only hope to rent the property as a warehouse/discount outlet). Schwegmann Westside argues the fair market value has been reduced by the expropriation because prior to the expropriation, an informed buyer would be willing to pay approximately $8,000,000 for the property because he could hope to rent it to a supermarket, but after the expropriationas a result of the reduction in accessibility and visibilityan informed buyer would only be willing to pay a few million dollars for the property because he could only hope to rent it as a warehouse or discount outlet. In support thereof, Schwegmann Westside, the owner of the property, points to record evidence that its lessee, the Schwegmann supermarket, experienced a growth in yearly gross sales up until the year the property was expropriated, and thereafter experienced a yearly decrease in gross sales such that six years later, gross sales were approximately half of what they were the year of the expropriation. More importantly, Schwegmann Westside refers to the trial testimony of three witnesses who were qualified as experts in the development of shopping centers and retail centers. These experts testified there was a direct relationship between the value of the property on the market and the volume of business a tenant can expect to do in that location, and that if a property loses half its business, it has lost at least half its value. These experts unequivocally testified that if the property were presently vacant and on the open market, no retailer or supermarket would lease the property for those purposes as a result of the highly restricted accessibility and visibility which resulted from the expropriation. They additionally testified that the most profitable use of the property after the taking was for industrial or warehouse use which was not dependent on customer ingress and egress and that warehouse space rents for half as much or less than retail locations like supermarkets. Thus, their testimony supports a finding that a buyer of the property after the expropriation could not expect to rent it at high supermarket rates, and could only expect the lower rent resulting from leasing the property as a warehouse or discount store; therefore, the buyer of the property would only be willing to pay a price for the property based on the assumption the *1180 property was only leasable as a warehouse or discount store.
It is irrelevant that Schwegmann Westside continues to lease the space as a supermarket to Schwegmann's. The determining factor in severance damages is the fair market value the remaining property had before and after the taking. "Fair market value" is the price a willing and informed buyer under usual and ordinary circumstances would be willing to pay if the property was exposed for sale on the open market when taking into consideration the purposes to which the property is best adapted and for which it can be legally used. Defendant's experts in shopping center development testified it would be "absolutely impossible" to lease the store to any other supermarket or similar establishment should Schwegmann's close its supermarket, and that the property was now leasable only as a warehouse or discount retail type establishment, which would give the property itself a much lower value. John Schwegmann, the CEO of Schwegmann Westside and the Schwegmann supermarkets, testified that if he did not already have a store in that location, he would not open a supermarket there today, and that the store remains open, despite the huge decrease in profits, because the store is able to absorb a portion of company overhead. Thus, although Schwegmann Westside may continue to receive supermarket rate rents from the supermarket for internal accounting reasons, if the property were to be put up for sale on the open market, the evidence shows the market would only be willing to pay a price for the property based on the expectation the property could only be leased as a warehouse/discount outlet.
In other words, a normal buyer under ordinary circumstances would not now be willing to pay a price for this property which is based on the expectation of being able to lease the property at the high rental rates retail/supermarket space is normally leased at. Rather, an ordinary buyer in the open market would now only be willing to pay a much lower price which reflects the fact that the property is only rentable, under ordinary circumstances, as a warehouse or discount outlet. The fact that the store continues to be leased to Schwegmann's supermarket is not an ordinary circumstance and is rather a unique function of the fact that the store and Schwegmann Westside ultimately share common ownership, and the store is being used for accounting purposes to absorb company overhead. Fair market value is instead determined by looking to what the property would sell for if it were offered on the open market after the expropriation, and there is evidence in the record upon which a jury could find that if this property were put on the open market now, a buyer would only be willing to pay a price based on the assumption the property could only be leased for warehouse or discount outlet purposes.
The jury had before it expert testimony that prior to the expropriation, a buyer in the open market was willing to pay anywhere from $8,148,786.00 to $8,984,000.00 for the property because he could hope to rent it to a supermarket at higher rental rates. The jury also had before it expert testimony that after the expropriation, a buyer on the open market would only be willing to pay anywhere from $2,765,000.00 to $3,200,000.00 for the property because he could only hope to rent it as a warehouse or discount outlet at much lower rental rates. Because there was evidence in the record upon which the jury could determine the property no longer had a fair market value after the expropriation of a property capable of being rented to a supermarket, the jury could not have manifestly erred in relying on the pre-expropriation appraisals of the state and the post-expropriation appraisals of the defendant. There is nothing inherently improper or manifestly erroneous in choosing a pre-expropriation appraisal of the property based on its use in one capacity and a post-expropriation appraisal of the property based on its use in a less lucrative capacity where there is otherwise evidence in the record to support a conclusion that the property indeed now has the less lucrative use. Indeed, the law mandates that a landowner in such a situation be compensated for the decrease in fair market value of his property caused by the expropriation. In light of the above, there was clearly a reasonable factual basis in the record from which the jury could have concluded that although the property was worth several million dollars prior to the expropriation because it could at that time be leased as a profitable supermarket, the property was after the expropriation and the resultant diminishment of traffic access worth much less *1181 than that because it no longer had a fair market value based on its use as a supermarket. Therefore, it was within the jury's discretion to award $4,500,000.00.

ON APPLICATION FOR REHEARING
PER CURIAM:
Application for rehearing is GRANTED IN PART. There is merit to the argument in the rehearing application that this Court should remand the case to the district court for a redetermination of the attorney's fees. La.R.S. 48:453(E) permits the court to award an attorney's fee of up to 25% of the property owner's recovery in an expropriation case. The district court awarded 10% rather than a higher percentage because a percentage exceeding 10%, applied to the $4,850,000 verdict, would yield an attorney's fee that would be excessive in relation to the services rendered by defendant's counsel. Now that this Court has reduced the award of severance damage from $4,850,000 to $895,000, the 10% award is no longer a studied determination. Accordingly, the case is remanded to the district court for the limited purpose of determining the proper award of attorney's fees in light of this Court's reduction of the district court's judgment.
The judgment is amended only insofar as to delete provision for an award of a 10% attorney's fee on final judgment. The case will be remanded to the district court for the purpose of redetermining the appropriate award of attorney's fees.
GRANTED IN PART; OTHERWISE DENIED. REMANDED TO THE DISTRICT COURT.
LEMMON and KIMBALL, JJ., concur in the remand to redetermine attorney's fees, but dissents from the denial of rehearing of the entire case.
NOTES
[1] Judge Burrell J. Carter, Court of Appeal, First Circuit, sitting by assignment as Justice Pro tempore in the vacancy created by the resignation of Justice James L. Dennis.

Pursuant to Rule IV, Part 2, § 3, Justice Jack C. Watson was not on panel.
[2] The record does not contain any of evidence of a written lease between the Schwegmann entities.
[3] Tallato estimated the loss at $167,251, while Eppling determined that the loss was $121,089. See (J. Landrieu's dissenting opinion) Schwegmann Westside Expressway, Inc. at 1368.
[4] Id. at 1275.
[5] The record contains a joint stipulation to this fact which was signed by counsel for both parties and filed on May 14, 1993.
[6] West Jefferson Levee Dist. at 1297, where we looked to La.R.S. 38:387 because the property in question involved a levee district. Under the facts of this case we look to La.R.S. 48:453(B) which falls under that section of law dealing with roads, bridges and ferries.
[7] LSA Const. Art 5 § 5(C) grants this court the authority to review both the law and facts in a civil proceeding.