IxPETERS, Judge.
We visit this expropriation case on appeal for the second time by Albert Latiolais and his wife, Lizzie H. Latiolais. The Latiolaises own immovable property which is the subject of an expropriation proceeding instituted by the Louisiana Department of Transportation and Development (DOTD). By judgment signed on June 12, 1991, the trial court awarded Mr. and Mrs. Latiolais $347,556.00, less $219,352.00 previously deposited by DOTD in the registry of the court; all costs of court; twenty-five percent attorney fees on the undeposited portion; and legal interest on the difference between the amount awarded by the trial court and the sum deposited into the court registry by DOTD. The Latiolaises appealed this judgment. The third 12circuit reversed the trial court’s judgment for failure to reopen the case for consideration of an expropriation settlement between DOTD and Lantier Oil Company, Inc. (Lantier Oil), a neighboring bulk fuel distributorship, and remanded the action for additional evidence. State, Dep’t of Transp. & Dev. v. Latiolais, 613 So.2d 1009 (La.App. 3 Cir.), writ denied, 619 So.2d 545 (La.1993). On remand, the trial court received additional evidence and then confirmed the judgment that had previously been rendered, except that the trial court assessed all costs of court accruing after June 12,1991, to the Latiolais-es. In this appeal, the Latiolaises contend that they still have not received adequate compensation for the loss of their property.
DISCUSSION OF THE RECORD
Beginning in 1976, the Latiolaises operated a bulk fuel distributorship on land owned by them within the municipal limits of Lafayette, Louisiana. The property contained aboveground and underground fuel storage tanks, an office, a warehouse for the storage of petroleum products, fencing, pipelines, and other stationary equipment necessary for the operation of the plant. On May 17, 1984, DOTD filed a petition to expropriate a portion of the land upon which the distributorship was located.
Trial on the expropriation issue began on May 27, 1987, and the trial court took the case under advisement. On July 31, 1987, the trial court ruled that the strip of property taken by DOTD rendered the remaining property unsuitable for the continued operation as a bulk fuel distributorship and that the proper measure of damages was the replacement cost of the entire operation without considering depreciation. The trial court then appointed its own expert to study the value of certain replacement cost issues. DOTD’s experts testified as to relocation costs ranging from $276,810.00 to $324,-500.00. These estimates were based on the assumption that the facility would be relocated outside the Lafayette municipal limits. The Latiolaises’ experts based their evaluations on relocation of the facility within the municipal limits of Lafayette, and |3these estimates ranged from $756,255.00 to $800,-689.00. The trial court’s expert actually submitted the highest appraisal, with a final estimation of $983,700.00 for replacement costs.
On September 17,1987, while the case was still under advisement, the Latiolaises filed a motion to reopen the trial for newly discovered evidence, which included a $1,340,309.00 expropriation settlement between Lantier Oil and DOTD. The Latiolaises wanted to present this new evidence as comparable just compensation. The trial court denied the motion.
Almost four years later, on June 12, 1991, the trial court signed a judgment in this case, awarding the Latiolaises $347,556.00 in compensation, less the amount previously deposited by DOTD; attorney fees; legal interest; and court costs.
The Latiolaises then filed a motion for new trial, which the trial court denied. They then appealed the June 12, 1991 judgment. The third circuit concluded that the trial court erred in not reopening the case for the introduction of evidence of the Lantier Oil settlement, “especially in view of the great discrepancies of monetary awards between the *69 two cases.” Id. at 1012. This court remanded the case to the trial court, specifically instructing the trial court to consider the evidence of the Lantier Oil settlement, which this court found to be “persuasive due to the similarity of conditions of the facilities.” Id.
On March 28,1995, the trial court received additional evidence on remand and immediately rendered the same judgment as had previously been rendered, with the exception of the court-cost modification. The Latiolais-es contend that the trial court’s initial award is constitutionally unacceptable in that it deprives them of just compensation for their loss and that the trial court’s judgment on remand is constitutionally unacceptable in that it violates the letter and spirit of the third circuit’s previous holding.
^OPINION
The language of the Louisiana Constitution was changed in 1974 to more fully compensate an owner whose property was taken through expropriation. See State, Dep’t of Transp. & Dev. v. Dietrich, 555 So.2d 1355 (La.1990). La. Const, art. I, § 4 now provides in pertinent part:
Property shall not be taken or damaged by the state ... except for public purposes and with just compensation paid to the owner or into court for his benefit.... In every expropriation ... the owner shall be compensated to the full extent of his loss.
(Emphasis added).
Prior to this change, a landowner was only entitled to the fair market value of the property taken and any severance damages associated therewith. Dietrich, 555 So.2d 1355.
In this case, DOTD no longer disputes that the Latiolaises are entitled to the cost of a replacement facility without regard for depreciation, and the only question before this court is the sufficiency of the judgment rendered. The standard of review of the trial court’s judgment on that question is manifest error. State, Dep’t of Transp. & Dev. v. Schwegmann Westside Expressway, Inc., 95-1261(La. 3/1/96); 669 So.2d 1172.
In its reasons for the June 12, 1991 judgment, the trial court awarded the Latiolaises the following sums for the following items for replacement costs:
Item 1 — Site/Land $ 84,000.00
Item 2 — Warehouse/Office Building 63,200.00 (with lift and compressor)
Item 3 — (a) Bulk Fuel Facility 185,000.00
(b) Wood Dock & Canopy 2,500.00
Item 4 — Site Improvements:
(a) Fenee/gates 6,000.00
(b) Gravel and shell 10,000.00
(e) Concrete parking 8,400.00
(d) Grade and fill 8,400.00
iBltem 5 —Miscellaneous costs:
(a) Permits and insurance 1,500.00
(b) Security light 800.00
(c) Engineering Fee 17,706.00
Although the judgment provides for a recovery of $347,556.00, the total of the above items is $387,506.00. The difference represents a credit to DOTD for the value of the property remaining to the Latiolaises. It is obvious that the original trial court decision was based on the estimates provided by DOTD’s experts. At the trial on remand, the trial court received the additional evidence and, on the same day, rendered a judgment in the same amounts as the prior judgment, with only a court-cost modification. When reduced to writing, it specifically stated that it “confirmed” the June 12, 1991 judgment. In rendering the later judgment, the trial court concluded that there were substantial differences between the Lantier Oil settlement and the litigation before the court.
In this appeal, the value of only two of these items is disputed. The Latiolaises contend that the trial court erred in its calculation of the replacement cost of the bulk fuel facility and in its calculation of the engineering fees associated with the planning and construction of a new facility. They contend that these two values should be increased significantly and that an additional twenty-five percent attorney fee should be assessed on the increased amount.
The dispute concerning the replacement cost of the bulk fuel facility involves whether the new facility should be located inside or outside the municipal limits of Lafayette. Byron Core, DOTD’s appraiser, based his evaluation on the cost of replacing the bulk plant outside the municipal limits. Gene Cope and Maurice Chappuis, the Latio-laises’ experts, and Robert Billeaud, the expert appointed by the trial court, based then-evaluations on the assumption that the facili *70 ty would be located within the city limits. Thus, the cost estimates of constructing a new bulk fuel facility | (¡ranged from a low of $140,658.00 by Core to a high of $756,255.00 by Chappuis. Cope’s estimate was $668,-409.00, and Billeaud’s estimate was $637,-000.00. The trial court set the value of this item at $185,000.00.
The $140,658.00 estimate was based on a report by Harry Higgins, DOTD’s expert, who submitted a cost estimate to Core for the construction of a bulk fuel facility outside the city limits. Cope, Chappuis, and Billeaud reached their conclusions as to this particular cost based on an estimate prepared by Jon H. Beeson, operations manager of Petrochem Maintenance, Inc., for an engineering plan developed by Felician Perrin to construct a new bulk fuel facility within the city limits. All of the experts acknowledge that it is significantly more expensive to construct a facility within the city limits. This is because an in-city facility, if allowed at all, would be required to comply with environmental regulations not applicable to out-of-eity sites and which were not in effect when the Latiolaises began business in 1976. Thus, we must first determine whether Mr. and Mrs. Latiolais have established that relocation in the City of Lafayette is an option to them.
DOTD argues that the Lafayette Code of Ordinances prohibits any new bulk fuel distribution businesses from being located within the municipal limits and that therefore compensation should be based on an out-of-city site. In support of its position, DOTD relies on the provisions of Chapter 12 of the Lafayette Code of Ordinances, which addresses fire prevention and protection within the municipality. Section 12-4 prohibits, within the city limits, the “[sjtorage of flammable liquids in outside aboveground tanks within the meaning of Section 16.22a of the fire prevention code.” Section 12-5 prohibits, within the city limits, “[tjhe erection, maintenance and operation of new bulk plants for flammable liquids within the meaning of Section 16.51 of the fire prevention code.” Section 12-6 prohibits, within the city limits, ‘Ttjhe erection, maintenance and operation of new bulk plants for bulk storage of ^liquefied petroleum gases within the meaning of Section 21.6a of the fire prevention code.”
Assuming that these provisions apply to a bulk fuel facility such as that operated by the Latiolaises, Section 12-7 of Chapter 12 provides a modification procedure for these very prohibitions:
The chief of the bureau of fire prevention shall have power to modify any of the provisions of the fire prevention code upon application in writing by the owner or lessee, or his duly authorized agent, when there are practical difficulties in the way of carrying out the strict letter of the code, provided that the spirit of the code shall be observed, public safety secured, and substantial justice done. The particulars of such modification when granted or allowed and the decision of the chief of the bureau of fire prevention thereon shall be entered upon the records of the department and a signed copy shall be furnished to the applicant.
(Emphasis added).
While acknowledging that the authority exists to modify the prohibition against a new bulk facility within the municipal limits of Lafayette, DOTD argues that such modification is merely a speculative possibility in the case of the Latiolais bulk fuel facility. The Latiolaises assert that such approval is not speculation, that the former fire chief had approved such a relocation, that the current fire chief would honor that approval, and that Beeson had interviewed the appropriate city officials and was certain he could obtain permission for a replacement location. It is apparent that the trial court did not consider the modification alternative, and the trial court erred in not doing so. A landowner is only required to prove to a reasonable probability that a permit is available. See West Jefferson Levee Dist. v. Coast Quality Constr. Corp., 93-1718 (La.5/23/94); 640 So.2d 1258, cert. denied, 513 U.S. 1083, 115 S.Ct. 736, 130 L.Ed.2d 639 (1995). In the instant ease, we find that the Latiolaises carried this burden of proof and that the appropriate valuation is one of an in-city site. In reaching this conclusion, we note also that the Lafayette Code of Ordinances was adopted on April 6, 1965, and became effec *71 tive on May 15, 1965. In fact, Sections 12-4, 12-5, and 12-6 predated the ^promulgation of the Lafayette Code and were originally a part of Ordinance Number 528 of the City of Lafayette, which became effective December 18, 1955. Thus, these provisions were in effect when the Latiolaises began their business in 1976, thereby supporting the concept that exceptions to the prohibitions under Chapter 12 are reasonable probabilities.
DOTD next argues that the Latiolais-es would receive a “windfall” because of relocation costs created by regulation changes and that the case law does require that a displaced businessman be relocated in the same political subdivision in which he was formerly situated. The trial court agreed. However, DOTD has not provided this court with any authority that requires a displaced businessman to take a less desirable location outside the political subdivision in which he was previously located.
The 1974 change to La. Const, art. I, § 4, requiring compensation to an owner “to the full extent of his loss,” permits a landowner to maintain a financial condition equivalent to that which he enjoyed prior to the expropriation. Dietrich, 555 So.2d 1355. Unfortunately, the Article does not specify how to fully compensate a displaced landowner. Id. As stated by the supreme court:
Delegates to the Constitutional Convention explained that full compensation should include moving costs, costs to relocate, inconvenience, and loss of profits from takings of business premises.
Id. at 1358.
In the instant case, we note that the enhanced costs of relocating the bulk fuel facility within the city limits, where it had been located since 1976, did not arise as a result of the Latiolaises’ actions but as a result of expansion of governmental regulation over the industry. As pointed out in testimony, there are numerous advantages to an in-city location, not the least of which is extra fire and police protection. According to Mr. La-tiolais, the location within city limits also provided a central location, which promoted operational efficiency in serving his current ^customers and gave him a competitive edge. While there is no requirement that the Latio-laises actually construct a new facility, if they choose to do so, there is no “windfall” to them since the proceeds would have to be invested entirely in the new location.
A landowner must prove by a preponderance of the evidence that the property taken by DOTD has a greater value than the amount deposited by DOTD for compensation. Id. at 1359. In this case, we find that the Latiolaises have satisfied that burden in the case of the replacement cost of the bulk fuel facility. Having found that the Latio-laises are entitled to compensation for relocation in the City of Lafayette, we amend the trial court’s judgment to increase that award to that extent.
However, in reaching this conclusion, we do not find that the trial court erred in failing to use the Lantier Oil settlement to increase the award to the Latiolaises. A recent sale of similar property in the same vicinity of the property to be valued constitutes the best evidence of market value. Latiolais, 613 So.2d 1009. Additionally, prior judicial decisions concerning the value of expropriated property constitute good evidence of the value of similar property in a subsequent expropriation proceeding. Id. However, such decisions are not controlling but may be considered with the other evidence in the case. Id.
We find that the Lantier Oil expropriation and the Latiolais expropriation are sufficiently dissimilar so that the Lantier Oil settlement cannot serve as a basis for valuing the expropriation of the Latiolais property. In the Lantier Oil proceedings, an expert witness had quantified $612,000.00 in business losses. Additionally, the expert planned to do an analysis concerning the opportunity cost of the capital and the present value of the future loss. We find no similar claim by the Latiolaises for business losses. Furthermore, Cope, the Latiolaises’ expert, estimated $1,177,954.00 for the full extent of the owner’s loss for Lantier Oil and only $800,-689.00 for the full extent of lipthe owners’ loss in Latiolais. DOTD argues that in addition to the claims for economic losses, the Lantier Oil settlement included claims for *72 legal interest for approximately three years, attorney fees, and expert witness fees. In brief, DOTD contends that the actual compensation for damages less interest, attorney fees, and expert witness fees was $840,309.00, including the original deposit by DOTD. We agree that the two expropriation proceedings cannot be compared except to say that the Latiolaises are obviously entitled to more than that which they received.
In determining the proper amount of the increase in the award to the Latiolaises, we have three estimates to consider. We note however that the trial court accepted the salvage value of the facility presented by Cope but rejected his other estimates because they were based on an in-city assumption. Since we find the in-city assumption appropriate, we accept the other values set forth by Cope and increase the award for the bulk fuel facility item from $185,000.00 to $708,539.00. For the same reasons, we increase the amount of engineering fees awarded from $17,706.00 to $160,000.00.
La.R.S. 19:8 provides for attorney fees to the landowner where the offer by the expropriating authority is less than the actual compensation awarded. Therefore, we award an additional attorney fee of twenty-five percent of the difference between the amount awarded by the trial court and the amount we have awarded on appeal.
Therefore, we increase the trial court’s judgment by $523,539.00, as it relates to the replacement cost of the bulk fuel facility, and by $142,294.00, as it relates to engineering fees associated with construction of a new facility. We award additional attorney fees of twenty-five percent on the increased amount. Because we find in favor of the Latiolaises, that portion of the trial court’s judgment taxing Mr. and Mrs. Latiolais with court costs from June 12, 1991, is reversed.
DISPOSITION
For the reasons set forth, we amend the judgment of the trial court to award | uAlbert Latiolais and Lizzie H. Latiolais the sum of $1,013,389.00, less $219,352.00 previously deposited in the registry of the court. We award twenty-five percent attorney fees on the $794,037.00, being the undeposited portion. We award legal interest on the sum of $794,037.00 from the date of taking. Finally, we reverse the trial court’s judgment taxing the Latiolaises with costs of court after June 12, 1991. All costs of these proceedings are taxed against the Louisiana Department of Transportation and Development, to the extent allowed by law.
AFFIRMED IN PART AS AMENDED; REVERSED IN PART AND RENDERED.