EDWIN A. LOMBARD, Judge.
RThe plaintiff, Board of Supervisors of Louisiana State University and Agricultural and Mechanical College, appeals the trial court’s denial of its motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a new trial. After review of the record in light of the applicable law and arguments of the parties, the judgment of the trial court is affirmed.

Relevant Facts and Procedural History

The plaintiff expropriated the property of the defendant,[1] 1732 Canal Street, L.L.C., to facilitate construction of the new University Medical Center in New Orleans. Along with filing the petition for expropriation of the property on October 18, 2010, the plaintiff deposited $4,500,000.00 into the registry of the court as compensation for the property. In response, the defendant filed an answer and reconventional demand alleging that the plaintiff had “not deposited the just and fair compensation due defendant.”
The plaintiff requested a jury trial and entered into stipulations that narrowed the scope of the evidence and testimony to be presented to the jury. Accordingly, |sthe only issue before the jury when the trial began on April 80, 2012, was the amount of just compensation due to the defendant. The jury heard eight expert witnesses in four days of testimony, retiring for deliberations on May 3, 2012, and returning that same evening with a verdict of *472 $9,566,640.00 as the total compensation due for the expropriated property. Thus, after subtracting the amount in the court registry ($4,500,000.00), the judgment was signed by the trial judge on May 10, 2012, in favor of the defendant for $5,066,640.00 as set forth in the jury verdict, plus interest. On May 17, 2012, the plaintiff moved for a JNOV arid, in the alternative, for a new trial, requesting that the trial court set the motion for hearing. The following day (May 18, 2012), the trial court denied the motion and the request for a contradictory hearing. The plaintiff timely filed this devolutive appeal.

Applicable Law and Standard of Review

Article 1, § 4 of the Louisiana Constitution grants the state the authorization to take an individual’s property with the provision that the taking be conducted for public purposes and the owner be compensated fairly.
The trier of fact’s factual determinations as to the value of property and entitlement to any other damages in an expropriation proceeding will not be disturbed on appeal absent of manifest error. West Jefferson Levee District v. Coast Quality, et al, 93-1718 (La.5/23/94), 640 So.2d 1258, 1277 (citation omitted). “Likewise, where the testimony of the experts and witnesses is contradictory and where the [trier of fact] decides to give more or less weight to the testimony of certain individuals, his findings cannot be overturned unless | ¿manifest error appears in the record.” Id. (citation omitted). An expert’s opinion regarding valuation is advisory only, used to assist the court in determining the amount of compensation due in an expropriation case. Therefore, it is for the trier of fact to determine the weight to be given to expert testimony, determined by such factors as the expert’s professional qualifications and experience, facts and studies upon which the expert’s opinion is based, the expert’s familiarity with the locality of the property involved, and the possible bias of the witness in favor of the side for whom he testifies. Id. Accordingly, where experts disagree as to the value of the land taken, the trier of fact has “much discretion in evaluating and determining the weight to be given to each expert.” Id. The trier of fact’s prerogative to weigh varying expert testimony and to reach a value that does not coincide with the testimony of any expert witness may only be exercised when there is evidence in the record to reasonably support the court’s valuation. Id.
Pursuant to La.Code Crim. Proc. Art. 1811, a JNOV may be granted on the issue of liability or on the issue of damages or on both issues. The Louisiana Supreme court has set forth the criteria to be used in determining when a JNOV is propér:
[A] JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the trial court believes that reasonable persons could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable persons could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. The motion should be denied if there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded persons in the exercise of impartial judgment might reach different conclusions. In making this determination, the trial court should not evaluate the credibility of the witnesses, and all ^reasonable inferences or factual questions should be resolved in favor of the non-moving party.
Trunk v. Medical Center of Louisiana at New Orleans, 04-0181, p. 4 (La.10/19/04), *473 885 So.2d 534, 537 (citing Joseph v. Broussard Rice Mill, Inc., 00-0628, pp. 4-5 (La.10/30/00), 772 So.2d 94, 99). This “rigorous standard of JNOV is based upon the principle that when there is a jury, the jury is the trier of fact.” Id. (internal citations and punctuation omitted).
The applicable standard of review in ruling on a motion for new trial is whether the trial court abused its discretion. Campbell v. Tork, Inc. 03-1341, p. 4 (La.2/20/04), 870 So.2d 968, 971. Thus, a motion for a new trial requires a less stringent test than for a JNOV and does not deprive the parties of their' right to have all disputed issues resolved by a jury. Davis v. Witt, 02-3102, p, 17 (La.7/20/03), 851 So.2d 1119, 1130 (citations omitted). In other words, although the language for the standards for a JNOV and new trial is similar, “the important distinction between a JNOV and a judgment granting a new trial is that a JNOV reverses the jury’s award and makes the apparent winner the loser, while a judgment granting a new trial merely erases the jury verdict (or trial court judgment) and puts the parties in the positions they occupied prior to trial.” FRANK L. MARAIST AND HARRY T. LEMMON, LOUISIANA CIVIL LAW TREATISE, VOLUME 1, CIVIL PROCEDURE, § 13.4, p. 353 (2d ed.1999).

Assignment of Error 1

The plaintiff argues that the jury verdict is unsupported by the evidence and, therefore, the trial court erred in not granting its JNOV. Specifically, the plaintiff asserts that the evidence does not support the jury’s calculation because the plaintiffs appraiser, Gayle H. Boudous-quie, testified that the fair market value of Lthe property was $4,500,000.00 and the defendant’s appraisers testified that the fair market value was $21,751,000.00 and $21,460,000.00. The plaintiffs argument is, in essence, twofold: (1) the verdict is unreasonable under State, Dept. of Transp. & Development v. Schwegmann Westside Expressway, Inc., 95-1261 (La.3/1/96), 669 So.2d 1172, 1177, and (2) it must be replaced because the plaintiff cannot discern how the jury reached its verdict of valuation.
First, the plaintiffs reliance on Schweg-mann is misplaced as it does not pertain to just compensation due for the expropriated property but, rather, to the calculation of severance damages, i.e., damages due to the landowner for that portion of his property which was not expropriated or, in other words, the diminution in the value of the remaining property caused by the taking. Moreover, in Schwegmann the jury award ($4,850,00.00) was more than any appraiser testified was due and based on combining the plaintiffs “before taking” appraised value of the expropriated property as a giant supermarket with the defendant’s “after taking” appraised value of the property as a discount retail outlet or warehouse. Accordingly, the Louisiana Supreme Court found the jury erred “when it accepted DOTD’s before taking appraisal as a special purpose property such that it remained a Schwegmann Supermarket, compared with Schwegmann’s after taking appraisal as a warehouse and/or discount retail outlet.” 669 So.2d at 1177. Notably, whereas the difference between the DOTD’s before and after taking value ranged between $102,407.00 and $293, 772.00, the range of the Schwegmann expert’s calculations ranged between $850,000.00 and $895,000.00 and based on its review of the record, the Court held that the higher amount ($895,000.00) was most appropriate.
[7In this case, the jury verdict was more than the plaintiff expert’s appraisal, but less than the defendant experts’ appraisals. Although the plaintiff expert and de *474 fendant experts arrived at different conclusions as to value, their calculations were based on similar assumptions; specifically, that the highest and best use of the property was adaptive re-use.
Defendant expert Heyward Cantrell testified that the highest and best use of the property was for adaptive re-use and that the building was suitable for multiuse, including apartments, senior living or assisted facilities, medical student housing, and other residential or medical related purposes. Based on a comparable sales analysis for the land, Mr. Cantrell asserted that, based on a land value of $45.00 per square foot, the land value of the property was $8,690,000.00. Mr. Cantrell valued the improvements on the property using the cost approach, beginning with the replacement costs for the shell of the building by John Williams (the defendant’s expert in the area of architecture, availability of tax credits, and adaptive re-use), applying standard indirect costs and depreciation analysis, as well as cleaning costs estimated by Mr. Williams and asbestos remediation costs, resulting in a depreciated improvement valued of $18,060,000.00. Thus, after adding the value of the land to the improvements, Ms. Cantrell opined that the October 2010 market value of the property and improvements was $21,750,000.00.
Defendant expert Jimmie Thorns testified that the highest and best use of the property was for future development of office, condo, retail, or commercial mixed use developments but conceded that, as the building was extremely well constructed, it was of the type adaptively reused “all the time in New Orleans.” Using comparable vacant land sales prices ranging from $46.95 to $98.83 per | ^square foot and giving greater weight to the price per square foot of a property two blocks from the defendant property in this case, Mr. Thorns estimated that the defendant land value was (based on $58.00 per square foot) $4,737,000.00. He used a separate comparative sales analysis of similar properties acquired for adaptive re-use purposes to determine that the total improvement value was $16, 703,000.00, thus resulting in a total just compensation due the landowner of $21,460,000.00. However, Mr. Thorns acknowledged that he failed to include into his calculations any value for the approximately 100,000 square feet of parking garage.
Plaintiff expert Gayle Boudousquie also testified that the highest and best use of the property was adaptive re-use in future development and, utilizing what she opined were the sale prices of comparative property, testified that the value of the defendant property, including improvements, was $4,500,000.00. Ms. Boudousquie offered no opinion as to the separate land value of the property.
Accordingly, although the experts arrived at wildly different conclusions as to the value of the property, the assumption upon which they based their opinions-adaptive reuse and comparative sales analysis-were the same. In the second part of their argument, however, the plaintiff attempts to argue that because the plaintiff cannot “crunch the numbers” to arrive at the jury’s final verdict of $9,566,640.00, the jury verdict is unsustainable. This argument is absurd. ' The jury was instructed[2] on the determination of just compensation, fair market value, and the highest and best use of the property and, as neither party challenges the jury instructions, we may assume the jury was appropriately in *475 structed on determining 19these issues. The record includes what appears to be the special jury interrogatories signed by the jury foreperson, indicating that the jury was only asked to indicate the just compensation due for the expropriated property and improvements, then subtract the amount deposited by the defendant into the registry of the court from this amount. Notably, there was no jury interrogatory to ascertain how the jury arrived at its determination. Moreover, the jury was presented with three expert appraisals based on similar assumptions as to the best use of the property but that arrived at different conclusion as to the value of the property based on the expert’s choice of comparable sales.
Not surprisingly, both parties insist that their experts’ comparables were the most similar to the subject property. Although we might, as did the Supreme Court in the Schwegmann case, find the higher valuations of the defendant experts more persuasive were we in the position to substitute our judgment for that of the jury, the jury was not confined to an either/or decision. Expert testimony is advisory only and when, as in this case, experts disagree as to valuation of the property, it is within the jury’s discretion to determine the weight to be given to each expert’s opinion based upon various factors including the expert’s qualifications and experience, his or her possible bias in favor of the side for whom he or she testifies, and the expert’s familiarity with the locality of the expropriated property.
When, as in this case, the jury reaches its own valuation based on the evidence before it, our review is restricted to whether the evidence in the record supports the jury’s finding. In this case, two experts testified to valuations that were considerably higher than that arrived at by the jury. Clearly, reasonable fact-finders clearly could (and did) arrive at a different valuation for the expropriated property than that put forth by the plaintiffs expert. Moreover, based on .the 110defendant experts testimony, the evidence would support a much higher valuation than that determined by the jury. Accordingly, because there is sufficient evidence to support the jury verdict, the trial court did not abuse its discretion in denying the plaintiffs motion for a JNOV. This assignment of error is without merit.

Assignment of Error 2

Next, the plaintiff contends that the trial court erred in denying its motion for a new trial because a “contradictory hearing on the issue of whether to grant a new trial is required pursuant to L.C.C.P. art. 1971.” (emphasis in original).
La.Code Civ. Proc. art. 1971 provides “A new trial may be granted, upon contradictory motion of any party or by the court on its own motion, to all or any of the parties and on all or part of the issues, or for reargument only.” The plaintiff provides no jurisprudential authority for its position, nor does the article give any indication that, upon the filing of a motion for a new trial, the trial court is required to afford the losing party an opportunity to reargue its case. Although La.Code Civ. Proc. art. 1972 requires that a new trial be granted “[wjhen the verdict of judgment appears clearly contrary to the law and evidence,” as discussed supra the verdict in this case is supported by the evidence and, accordingly, La. Code Civ. Proc. art. 1972 is inapplicable. The trial court did not abuse its discretion in denying the plaintiffs motion for a new trial and, accordingly, this assignment of error is without merit.

Conclusion

After review of -the record in light of the applicable law and arguments of the par *476 ties, the judgment of the trial court is affirmed.
AFFIRMED

. Prior to trial, the plaintiff settled with the intervenor/lessee Sprint Spectrum, L.P., leaving only the plaintiff and defendant as parties in this litigation.

. The record on appeal includes the proposed jury instructions by both parties, although it is unclear which instructions were actually given to the jury.